## Case No. 14,463.

### UNITED STATES v. APPLETON.

[1 Sumn. 492.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1833.

#### EASEMENTS—BUILDING WITH WINGS—PASSAGES—CONVEYANCE.

1. A block of buildings, consisting of a central building and two wings, was erected in 1808, with a piazza in front of the central building, and side-doors in the wings, which opened on and swung over the piazza, the upper parts of which were used as windows. The centre building was occupied by the United States as a custom-house, under a lease from 1808, to July, 1816, when they purchased the same in fee, and have ever since been in possession thereof. The wings were sold in 1811 to other parties. *Held,* that these parties are entitled under the conveyance, independent of the lapse of time, to the use of the side-doors and windows therein, and passage therefrom, as they used them at the time of the conveyance.

[Cited in brief in Dexter v. Tree, 117 Ill. 533, 6 N. E. 506, Frederick v. Devol, 15 Ind. 359. Cited in Janes v. Jenkins, 34 Md. 7. Cited in brief in Jordan v. Woodward, 40 Me. 318. Distinguished in Keats v. Hugo, 115 Mass. 209. Keiper v. Klein, 51 Ind. 320. Cited in Lampman v. Milks, 21 N. Y. 509; Morrison v. Marquardt, 24 Iowa, 61; Winchester v. Hees, 35 N. H. 48.]

2. Where a house or store is conveyed by the owner thereof, every thing passes which belongs to, and is in use for, the house or store, as an incident or appurtenance.

[Cited in Steinbach v Stewart, 11 Wall. (78 U. S.) 576. Stat. v. Stark, Case No. 13,318; Bank of British North America v. Miller, 6 Fed. 551.]

[Cited in Atkins v. Bordman, 2 Metc. (Mass.) 464. Cited in brief in Comstock v. Johnson, 46 N. Y. 619; Coolidge v. Hager, 43 Vt. 12. Cited in Doyle v Lord, 64 N. Y. 437; Farmers' Loan & Trust Co. v. Commercial Bank, 11 Wis. 210; Hadden v. Shoutz, 15 Ill. 582; Hardy v. McCullough, 23 Grat. (Va.) 261. Distinguished in Hilliard v. New York & C. Gas Coal Co., 41 Ohio St. 667. Cited in Holloway v. Southmayd, 139 N. Y. 407, 34 N. E. 1047, 1052; John Hancock Mut. Life Ins. Co v. Patterson, 103 Ind. 587, 2 N. E. 191; Leonard v. Leonard, 7 Allen, 283; Meek v. Breckenridge, 29 Ohio St 648. Morgan v. Mason, 20 Ohio, 411; Morrison v. King, 62 Ill. 36. Distinguished in Parsons v. Johnson, 68 N. Y. 62. Cited in Ray v Sweeney, 14 Bush, 15; Riddle v. Littlefield, 53 N. H. 509; Scott v. Michael, 129 Ind. 255. 28 N. E. 546; Seymour v. Lewis, 13 N. J. Eq. 444. Cited in brief in Stevens v. Pillsbury, 57 Vt. 207. Cited in Thomas v Wiggers, 41 Ill. 478.]

Trespass quare clausum fregit. The parties agreed to a statement of facts, the substance of which is as follows: A certain block of brick buildings, situate on Custom-House street, in Boston, was erected by the owners of the land on which it stands, in April, 1808, in the form, size, and manner, and with the doors and windows of each tenement, and the piazza in front of the central building, precisely as they now exist. The central building was designed for, and has since been used as, a custom-house. The stores constituting the wings project several feet beyond the front of the custom-house; and each of these stores has a side-door opening on, and swinging over, a part of the piazza, in front of the custom-house; and by means of these doors and a flight of steps of the piazza, persons can pass to and from those stores into Custom-House street. The doors are so built as to have the upper parts thereof used as windows to furnish light, looking from the stores into and upon the piazza. From the time of the erection of the stores until the trespass complained of, the side-doors have been constantly used by the owners and occupants thereof for the purpose of passing to and from Custom-House street, and of having light as above stated without obstruction, although each store has also a door fronting on Custom-House street. The United States occupied the central building, as a custom-house, under a lease from 1808 to July, 1816, when they purchased the same in fee, and have ever since been in possession thereof, using the same as a custom-house. The owners of the block (E. Francis & Co.) sold one of the wings in April, 1811, to one John Osborne; and the other, in the same month and year, to the defendant [Samuel] Appleton.

Mr. Dunlap, U. S. Dist. Atty.

The owners of these wings claim a right to swing doors, and a right of way from these doors, over land without their own boundaries, and within the boundaries of the United States. This is the exact nature of their claim. There are but three ways in which such an easement can be obtained. First, in a case of necessity. Secondly, in a case of prescription, founded on an adverse use of more than twenty years. Thirdly, by grant. 3 Cruise, Dig. 109, tit. "Ways." The present claim does not rest upon the ground of merit, nor of prescription. It is not a way of necessity, for the front doors of each of the wings are upon the street. It does not rest upon prescription, for the twenty years did not elapse before the commencement of the suit. And the prerogative principle nullum tempus applies; further, the use was merely a matter of indulgence, and not adverse. See 7 Mass. 385; 14 Mass. 33; 2 Pick. 466; Inhabitants of First Parish in Medford v. Pratt, 4 Pick. 228. The claim must rest for support on a grant. No express grant in terms of a right to swing the doors, &c., and pass from the wings over the piazza, is pretended. But these rights, it is contended, were appurtenances, and pass with the estates, whether the deed contains the word "appurtenances" or not, as part and parcel of the estates granted. This is the very question, whether there ever existed any such easements as those now claimed, as appurtenances to these wings. It is denied, that there ever were any such appurtenances to the wing estates. The original owners built the whole centre build-

[1] [Reported by Charles Sumner, Esq.]

ing and wings. Did they own the wings with the appurtenances of these easements in the centre lot? Certainly not. The whole was one lot, one estate, and one ownership. A man with a house and an adjoining field, does not own a right of way in that field; he owns the whole field. To test this more strongly: suppose there had been a right of way expressly granted and annexed to these wings, over the centre lot; suppose E. Francis & Co. to have become the owners of the wings, with the appurtenances; suppose further, that Francis & Co. had afterwards bought the centre lot. Now, what could have become of the appurtenances to the wings? They would have vanished by the union of the right of property in the fee, with the right to the easement; a merger would have taken place. Co. Litt. 114b; Cooper v. Barber, 3 Taunt. 99; 2 Bl. Comm. c. 11. The foundation of the claim, on the part of the proprietors of the wings, is, that the grantor once had the right; they claim, that they may have his estates with the appurtenances. The answer is, the grantor of the wings had the right, not as appurtenances to the wings, but because he owned the centre and the whole. The United States now have all his rights in the centre lot.

What is an appurtenance? It is something annexed to "another thing more worthy"; that is, an easement estate less than the estate to which it is appendant or appurtenant. How were Francis & Co., when owners of the whole and standing on the piazza, owning and enjoying a less estate, or a less worthy estate, than when standing inside the doors of the wings? Their estates were equal and the same, the fee in all the lots, wings and centre. There were, then, no such things legally existing, as the appurtenances claimed, and could not have been, when the whole was under one owner. Consequently, when the estates in the wings were leased out, there could have been no rights in the grantees to swing doors, and rights of way, unless expressly created and granted. A few familiar examples are offered to illustrate the argument. A owns black acre and white acre; he makes a gate or a stile to pass from one field to another. He conveys black acre, with all the privileges and appurtenances. The grantee surely cannot say to the grantor, I have all the rights and privileges, and enjoyments which you had; and one of your enjoyments was, to pass through the gate, or over the stile, into white acre. Again; suppose in the case last put, the owner of black and white acre, with the gate or stile, conveys at the same time, and by one deed, black acre to A, and white acre to B; let A and B the next day, the several grantees, meet on the stile; which of them shall yield or give back? Again; a man has a house and yard, and behind them a garden, which he is in the habit of entering by a gate from his yard. He conveys the house and yard by boundary lines; the right to open that gate into the garden and pass there, is not conveyed under the word "appurtenances." Yet the owner built the gate, as the doors to the wings were built, and used the garden as freely as the owners did or could have used the piazza, when they were the owners of the whole estate. Barker v. Clark, 4 N. H. 380; Grant v. Chase, 17 Mass. 442. The cases, Story v. Odin, 12 Mass. 160; Nicholas v. Chamberlain, Cro. Jac. 121; Staple v. Heydon, 6 Mod. 4, 2 Ld. Raym. 922,—are clearly distinguishable from the present.

Great stress is laid upon the continued use of this indulgence, as furnishing an exposition of the construction of the deeds. It is supposed, that but little advantage can reasonably be made on that account. Had the piazza been the ornamental entrance to a private mansion, those doors would not have been permitted a moment. But the building being in a great measure public, though not, like the street, public property, the doors in the wings produced no inconvenience; nor did the ingress to, or the egress from, the wings produce any. Hence the indulgence has been permitted, which is now contended for as a right, and which as a right is resisted. If there is any question whether the possession be adverse or not, that should go to a jury. No adverse possession is admitted.

Mr. Cooke, for defendant.

(1) The defendant acquired the legal right to use the door and way in question, by the express terms of his grant in 1811, April 5th, under the words, "the store with all the privileges and appurtenances." "Appendant or appurtenant is a thing used with, and related to, or dependent upon, another thing, more worthy in its nature and quality than the thing whereunto it is appendant." Co. Litt. 121b, 122. If, then, a door, and privilege of passing out of a door, may be considered a thing used with, and related to, a store, then the door in question passed by the express words of the grant. But it is not even necessary the words "privileges and appurtenances" should be used to pass the right of way, if it was in existence, and used as such, at the time of the grant. "In the construction of a grant, the court will take into consideration the circumstances attending the transaction and the particular situation of the parties, and state of the country, and the thing granted, for the purpose of ascertaining the probable intent of the parties." Bigelow, Dig. Com. § 5. In Fowle v. Bigelow, 10 Mass. 379, the supreme court actually admitted parol testimony to show the existence of a gate at the time of the grant, in order to give such a construction of the grant, as would give a right of way. See Leland v. Stone, Id. 459; Kent v. Waite, 10 Pick. 141; Nicholas v. Chamberlain, Cro. Jac. 121; Whitney v. Olmstead, Id. 284; Staple v. Heydon, 6 Mod. 4, 2 Ld. Raym.

922; 3 Kent, Comm. 338; Grant v. Chase, 17 Mass. 447. I have, heretofore, endeavoured to maintain the defendant's right to the use of the door and way, upon the legal effect and operation of the express terms of his grant.

(2) The defendant has acquired the right to the use of said door, both as a door and a window, under what is legally called an implied grant, or an implied covenant of the grantor, resulting from the nature and character of the thing granted, that the grantor would not derogate from his own grant. See Compton v. Richards, 1 Price, 36–38; Swansborough v. Coventry, 9 Bing. 305; Woolr. Window Lights, 60, 61, 39; Story v. Odin, 12 Mass. 160; Parker v. Smith, 17 Mass. 415.

(3) The defendant has acquired a right to the use of the door and way by more than twenty years' exclusive enjoyment. This court, in Tyler v. Wilkinson [Case No. 14,-312], states, that "by our law, upon the principles of public convenience, the term of twenty years of exclusive enjoyment has been held a conclusive presumption of a grant or right." The defendant's case comes precisely within this principle. The facts find the erection of the block in 1808, and at that time a lease of the custom-house to the United States, and an uninterrupted enjoyment since. And here I admit the enjoyment must be adverse, and not by consent or permission; but the facts in the case show a clear adverse possession. The United States first entered under their lease, as the case finds, in 1808, and here then was the commencement of a clear adverse possession under an adverse title; and the case shows that the nature of this possession has not been changed or altered; and, if so, the twenty years elapsed so long ago as the year 1828. If the use was by consent, the burden is on the plaintiff. But supposing the adverse possession must be considered as commencing on the 12th of April, 1811, when our grant commenced; we are still within the limited time, the first writ being served on the 8th of April, 1831, four days before the twenty years would have elapsed. In order to afford a presumption of grant, as the law now is, a use for twenty full years is not now necessary. Indeed, if it was, the four days necessary to complete the time in the present case would hardly be considered. Bealey v. Shaw, 6 East, 215, is the leading case, and the opinion of Lord Ellenborough is as follows: "I take it that twenty years' exclusive enjoyment of the water in any particular manner, affords a conclusive presumption of a grant; but less than twenty years may, or may not, afford such presumption, according as it is attended with other circumstances, to support or rebut the right." What, then, are the circumstances calculated to support this right? See Haight v. Morris Aqueduct Co. [Case No. 5,902], Ang. Water-Courses (2d Ed.) p. 84; Ricard v. Williams, 7 Wheat. [20 U. S.] 59; 2 Selw. (Wheat. Ed.) 506.

(4) Here was such a dedication of the "locus in quo," as forms a complete defence to this action of trespass. I say, such a dedication, because it is now settled there may be a partial or limited dedication (Woolr. Ways, pp. 13, 33), which is a complete defence to an action of trespass; and it is sufficient for my purpose to show there has been a partial or limited dedication or license. What are the facts? The building was erected for a custom-house; hired and purchased for the express purpose of being dedicated to that use. It has been dedicated by a use of near thirty years. It has become, as its name purports, the custom-house of the United States, for all the citizens of the United States. Indeed, on this state of facts, it would be easy to maintain the ground of a complete and unlimited dedication to the public. In Rex v. Lloyd, 1 Camp. 260, the court say: "If the owner of soil throws open a passage, and neither marks by any visible distinction, that he means to preserve all his rights over it, nor excludes persons from passing over it by positive prohibition, he shall be presumed to have dedicated it to the public." Same principle in Roberts v. Karr, 1 Camp. 262, note. Here we meet with no embarrassment, as to the time of dedication; it has now been used for near thirty years, and it has even been held, that a use for six years was sufficient to found the presumption of dedication. Trustees of Rughby Charity v. Merryweather, 11 East, 376, note; Jarvis v. Dean, 3 Bing. 447; Rex v. Barr, 4 Camp. 16.

STORY, Circuit Justice. The question is, whether the defendant, Appleton, in virtue of the conveyance to him, is entitled to swing the side-door of his store over the piazza of the custom-house, and to pass in and out of his store through that side-door into Custom-House street. In other words, is he entitled to the use of that door and the piazza, as a passage from and to Custom-House street? It appears to me, that upon principle and authority he is so entitled. The general rule of law is that when a house or store is conveyed by the owner thereof, every thing then belonging to, and in use for, the house or store, as an incident or appurtenance, passes by the grant. It is implied from the nature of the grant, unless it contains some restriction, that the grantee shall possess the house in the manner, and with the same beneficial rights, as were then in use and belonged to it. The question does not turn upon any point as to the extinguishment of any preexisting rights by unity of possession. But it is strictly a question, what passes by the grant. Thus, if a man sells a mill, which at the time has a particular stream of water flowing to it, the right to the water passes as an appurtenance, although the grantor was, at the time of the grant, the owner of all the

stream above and below the mill. And it will make no difference, that the mill was once another person's; and that the adverse right to use the stream had been acquired by the former owner, and might have been afterwards extinguished by unity of possession in the grantor. The law gives a reasonable intendment in all such cases to the grant; and passes with the property all those easements and privileges, which at the time belong to it, and are in use as appurtenances. Mr. Justice Doddridge, in Sury v. Pigot, Poph. 166, put the very case. "A man," (said he,) "owns a mill, and afterwards purchases the land, upon which the stream goes, which runs to the mill, and afterwards aliens the mill; the water-course remains." Let us take another case. A man sells a dwelling-house with windows then looking into his own adjacent lands There can be no doubt, that the grant carries with it the right to the enjoyment of the light of those windows; and that the grantor cannot, by building on his adjacent land, entitle himself to obstruct the light, or close up the windows. Mr. Justice Bayley, in a very late case, put the very illustration. "If," (said he,) "I have a house surrounded by my land, and sell the house, I sell the right to light from the windows. The sale of the house, as it stands, gives a right to the light coming in at the windows, without necessity for twenty years' possession of the easement." Canham v. Fisk, 2 Tyrw. 155, 157. He also put another case: "Suppose," (said he,) "the owner of two fields sells one, having a stream of water flowing through it; can the vendee stop that water-course? Prima facie no exception in the conveyance could be presumed." Id. This is the converse case; for here the law gives a common-sense construction to the grant, and supposes, that each field has the appurtenances thereof in statu quo, notwithstanding the grant.

It has been very correctly stated at the bar, that in the construction of grants the court ought to take into consideration the circumstances attendant upon the transaction, the particular situation of the parties, the state of the country, and the state of the thing granted, for the purpose of ascertaining the intention of the parties. Bigelow, Dig. "Conveyance," S, p. 211. In truth, every grant of a thing naturally and necessarily imports a grant of it, as it actually exists, unless the contrary is provided for. Here, the side-door in question was in actual use, as an appurtenance de facto, at the time of the grant. Could the owners of the central building on the next day after have shut it? Could they have shut out all the light of the window in the upper part of it? Could they have built down to Custom-House street, and filled up the piazza? In my opinion it is most clear, that they could not. Their grant carried by necessary implication a right to the door and window, and the passage, as it had been, and as it then was, used. The case of Nicholas

v. Chamberlain, Cro. Jac. 121, is in point. So is the case of Staple v. Heydon, 6 Mod. 1, 4, notwithstanding the criticism which has been passed upon it at the bar. There, the third point decided by the court was, that "If one be seised of black acre and white acre, and use a way over white acre from black acre to a mill, river, &c., and he grant black acre to B, with all the ways, easements, &c., the grantee shall have the same conveniency that the grantor had, while he had black acre." The report of the same case, in 2 Ld. Raym. 922, is quite imperfect, and far less satisfactory. And Mr. Chancellor Kent, in his learned Commentaries, fully sustains the doctrine in 6 Mod. 4. 3 Kent, Comm. (2d Ed.) Lect. 51, p. 420.

It is observable, that in this case reliance is placed on the language of the grant, "with all the ways," &c. But this is wholly unnecessary; for whatever are properly incidents and appurtenances of the grant will pass without the word "appurtenances," by mere operation of law. So, it is laid down by Lord Coke in Co. Litt. 307. The same doctrine is affirmed by Lord Chief Baron Comyns (Com. Dig. "Grant," E. 11); and it has been fully supported by the supreme court of Massachusetts in a very recent case (Kent v. Waite, 10 Pick. 138). The doctrine of the same court also in the cases of Grant v. Chase, 17 Mass. 443, 447, 448, and Story v. Odin, 12 Mass. 157, especially the latter, appears to me fully to support my present opinion. The question is not indeed new to me; for I had occasion in the case of Hazard v. Robinson [Case No. 6,281], to examine the subject at large. I adhere to the doctrine stated in that opinion, which covers the whole ground of the present question. If there had been any doubt upon the conveyance, which I think there is not, the subsequent usage would, in my judgment, be conclusive, as to the construction put upon the conveyance by all the parties in interest. My opinion, therefore, is, that judgment upon the statement of facts ought to be for the defendant.