## BROWN *v.* PENTZ.

### March, 1851.

Under an agreement between owners of adjoining lots, that one may build a wall upon the boundary line, partly on each lot, and that the other and·his assigns shall pay a portion of its value, whenever it shall be used by them as a party wall, the grantee of the lot of the builder may recover from the grantee of the other lot, whenever the latter makes use of the wall as a party wall. Under such an agreement the payment is to be deemed due to the one whose property is taken and used, although the agreement and the deeds may not explicitly direct the payment to be made to him.*

John A. Brown brought this action in the supreme court in equity, against Frederick, William A. F., and John Pentz, for the value of a certain party wall, erected by one Sandford, upon a lot then owned by him, and known as No. 73 Greenwich-street, in the city of New York, and adjoining and extending seven inches upon the adjoining premises, known as No. 75 Greenwich-street, then possessed by one John S. Roulet, and now through various conveyances vested in defendants. The cause was transferred to the New York superior court, pursuant to statute. Upon the trial, it appeared that the wall was erected by Sandford and extended over a part of Roulet's land, by his license, and under his agreement, executed for himself and as executor of the estate of George Rossier, deceased, that in case he should thereafter build upon his lot, or if the said wall should be used by him or his heirs, executors, administrators or assigns, as a party wall, then he would pay one-half of the value of said party wall. That soon after the building of said wall Sandford transferred his lot to one Robert Dickey, his heirs and assigns ; from whom, by various

---

* This decision was made by an equally divided court, and the judgment below was therefore affirmed under the statute. And although it is not strictly therefore a binding authority, it has been followed as such by the court whose judgment was affirmed, in two subsequent cases Burlock *v.* Peck, 2 *Duer*, 90, and Eno *v.* Del Vecchio, 4 *Id.* 53 ; 6 *Id.* 17 , and is entitled to great weight upon the question involved.

A decision briefly noted as Pentz *v.* Brown, in 5 *N. Y. Leg. Obs.* 19, is overruled in effect, by the case in the text.

conveyances, it became vested in plaintiff; and plaintiff also became the assignee of the agreement relating to the party wall, by assignment from Mary Sandford, administratrix of said Sandford, deceased. That defendant became the owner of the lot formerly owned by Roulet, by virtue of a conveyance from John A. Iselin; which contained the following clause: "The northerly wall of the dwelling-house fronting on Greenwich-street, now or late of Robert Dickey, standing on the lot adjoining the above described lot of land" (meaning the premises conveyed thereby to the defendants), "on the south, being a party wall erected by the said Robert Dickey, seven inches whereof is on the lot above described, one half of which wall *is to be paid for* by the said parties hereto of the second part" (the defendants), "whenever they shall build upon said lot thereby conveyed, or the said wall shall be used by them." It also appeared that defendants had built a store upon their lot, and used the said wall; and that the value of one half of the wall was two hundred and thirty-five dollars and sixty-three cents.

The question was, whether the plaintiff could recover this compensation, considering that the defendants were not shown to be the assigns of Roulet's title, and that the clause in their deed did not specify whether the defendants were to pay the compensation for the wall to the builder of the wall or his assigns, or to the grantor with whom they agreed to pay it.

Judgment was rendered for the plaintiff, for the sum claimed, and was affirmed by the court at general term. Defendants appealed to this court.

*H. B. Cowles*, for defendants, appellants.

*Thos. C. T. Buckley*, for plaintiff, respondent.—By the acceptance of the possession of the lot in question, under the Iselin conveyance, the defendants are estopped from disputing a primary liability to pay *some one* for one half of the "*value of that wall.*" See Carver v. Jackson, 4 *Pet.* 83, 88; Sinclair v. Jackson, 8 *Cow.* 586; 4 *Cruise Dig.* 393; Torrey v. Bank of Orleans, 9 *Paige*, 649; affirmed in 7 *Hill*, 260; Russel v. Kinney, 1 *Sandf. Ch.* 39; Campbell v. Mesier, 4 *Johns. Ch.* 334. The plaintiff is equitably entitled to receive the amount which

defendants are primarily liable to pay, as assignee of the moneys expended in the erection of the wall by Sandford, or as representing the same claim under his deed with full covenants from Sandford as a thing appurtenant to the land granted. 2 *Phil. on Ev.* notes, p. 295; Blyer *v*. Mulholland, 2 *Sandf*. 479; Torrey *v*. Bank of Orleans, 9 *Paige*, 649; Halsey *v*. Reid, 9 *Id*. 446; Marsh *v*. Pike, 10 *Id*. 595; Curtis *v*. Tyler, 9 *Id*. 435; Maure *v*. Harrison, 1 *Eq. Ca. Abr*. 93.

McCoun, J.—The north wall of Sandford's house, built by him in 1812, on lot No. 73, was placed partly on lot No. 75, adjoining, then in possession of Roulet as the owner thereof. This was done under an agreement in writing between Sandford and Roulet, by which the latter agreed, in case he should thereafter build upon lot No. 75, or if the wall should be used by him, his heirs or assigns, as a party wall, then he would pay one half of the value of such wall. The wall, when built, still belonged wholly to Sanford. He was not a trespasser by building it partly on the adjoining lot. The agreement was a license to enter upon that lot and to erect it there. At any time before the wall was used by the owner of that lot as a party wall, Sandford or any grantee of his was at liberty to take it down and remove it. It formed a part of his house, and though overlapping another's land, it was transferable by any deed of conveyance which Sandford might make of his house and lot. The title to that part would pass and vest in a purchaser, the same as any other part of the premises.\* By sundry successive conveyances the title to lot No. 73, now known as No. 69 Greenwich street, became vested in Brown, the plaintiff below, in the year 1838, with the identical house built by Sandford still standing upon it. As yet the wall had never been used as a party wall by any owner or occupier of the adjoining lot. Brown continued to be the owner, when in 1845, the defendants below, having acquired a title to the adjoining lot, formerly No. 75 (now No. 71), erected a building upon it, and for the first time used the wall in question, by making it a party wall between them as the owners on one side

---

\* See 4 *Kent Com*. 7 ed. m. p. 467, and cases cited: United States *v*. Appleton, 1 *Sumn*. 492; Burke *v*. Nichols, p. 260 of this vol.

and Brown as the owner on the other. From these facts it is plain that if the defendants are bound to make compensation to anybody for the use they had made of the wall, it must be to Brown, because *it is his property which has been taken and used* by the defendants. To him, therefore, the right to compensation naturally belongs, and it is not essential to that right that the plaintiff should show anything more than he has done; but for greater caution, and to secure the defendants from all danger of being called upon by Sandford's representatives to make compensation, founded on the original agreement with Roulet, the plaintiff below shows that he is the holder of that agreement also, by assignment from Sandford's administratrix. And why should not the defendants below be bound to make this compensation? They have taken and used their neighbor's property with his consent. The wall was placed there to be used in the way they have used it. It was built expressly wfth reference to such a use, and was to be paid for when so used, and not before. The condition on which payment was to be made has never happened until now. The defendants are not at liberty to say it may have been paid for already by somebody else, especially as they took their deed with express notice in the deed itself that the northerly wall of the house adjoining was a party wall, covering seven inches of the land which they had bought, and was to be paid for by them whenever they should build and should use it. True, the deed does not say to whom payment was to be made, and it is not necessary it should. The law determines that, upon the principles I have stated. It also appears there was a mistake in the deed in speaking of the wall as a wall erected by Robert Dickey which they were to pay for; but this is immaterial. The wall spoken of was the wall then standing, and the same which they have used, and this is the wall built by Sandford under an agreement with Roulet, and there never has been any other. And have not the defendants acquired a *property* which they did not before possess, by taking the northerly part of the wall into their building, incorporating it with their new structure, and making it a part thereof? It has now become their property, that is, seven inches of it, which stands upon their land. It is no longer liable to be removed or disturbed by the owner of the

other lot. If ever it should become dilapidated so as to require reparation or renewal, one owner can compel contribution from the other towards the expense. Campbell *v.* Mesier, 4 *Johns. Ch.* 334. In England there is a statute, 14 *Geo. III.* c. 78, called the building act, to regulate the building of party walls, as a preventive against fires. The principles which govern between the owners of walls built under that act in relation to their rights and liabilities, are equally applicable where a wall of that description has been erected by agreement between the owners of adjoining lots. They are principles of natural justice which result from the nature of the interest or ownership in a party wall. Such a wall, standing partly on the land of one, and partly on the land of the other, does not, it is true, constitute a tenancy in common between them, because each owns in severalty to the dividing line of their respective lots, and therefore each of the house owners has a separate property in a moiety of the party wall, and an *easement likewise for the support of his house in the other moiety ;* so that it has been held that one of them may maintain trespass against the other for pulling down so much of the party wall as stands upon his own land. Matts *v.* Hawkins, 5 *Taunt.* 20 ; *Gibbons on Dilapidations, &c.,* 110.

In Gibbons' treatise, just mentioned, it is also said that, until the proportion of the expense of building the party wall is paid, the property in the whole wall and in the whole ground on which it stands, is in the builder thereof, and when there is no other house adjoining the party wall at the time it is built, the portion of the expense becomes due from the neighbor as soon as he cuts into and first uses the party wall. When it is built against an adjoining house, the portion becomes due when the wall is finished. *Gibb.* 123. See also Stuart *v.* Smith, 2 *Mars.* 435 ; S. C., 7 *Taunt.* 158. I entertain no doubt of the correctness of the decision of the court below.

H. GRAY, J. (dissenting.)—By the terms of the contract under which Sanford erected the wall in question, he was to be paid for it by Roulet when he should build upon the adjoining lot, or the wall should be used by him, his heirs, executors, administrators or assigns. There is neither allegation nor proof

that Iselin or the defendants are the heirs or assigns of Roulet, or that the defendants hold in any manner in subordination to his title ; for aught that appears the title of Iselin was adverse to that of Roulet. Nevertheless, he had the right (which the defendants cannot question), to provide for the payment to Sandford for the party wall built by him, in the event of its being used by them ; but when such provision is made by a party under no obligation to make it, it should be so free from ambiguity as not to be susceptible of any reasonable construction of being considered a provision for the benefit of the party making it. The question then arises whether Iselin intended to obligate the defendants to pay the builder of the wall its value in the event of its being used by them. The provision is that one half of the party wall is to be paid for "whenever they should build upon the lot or use the wall." The mere fact that the clause referred to stated that the wall in question was erected by Dickey, is not, unaided by any extrinsic circumstances, sufficient evidence that the builder of the wall, whoever he was, had not been paid; it is by no means unreasonable to suppose that the statement that the wall was erected by Dickey was intended merely as descriptive of the wall to be paid for, and having no regard whatever to the person to be paid. So far then alone as the deed above furnishes evidence, the obligation to pay must be regarded as having been made for the benefit of Iselin, the owner, who conveyed to the defendants the land upon which the wall stood, and unless the extrinsic circumstances point to some other person than him as the one to whom payment was to be made, the plaintiff should not have recovered. It is not enough to show that a third party built the wall, and it was to be paid for when it was used ; but it should at least have been shown that Iselin knew that the builder was unpaid. It is idle to suppose that he intended to provide for the payment of a demand of which he was wholly ignorant. If it had been shown that Iselin held under Dickey, who derived his title from Sandford, and knew that the builder of the wall was unpaid for his services and materials, and was to be paid when the wall was used, then perhaps it might be inferred that it was for the benefit of the builder that the provision was made. There is, however, no

evidence in the case to show that Iselin ever knew Sandford, or heard that he was the builder of the wall in question. On the contrary, the provision in the deed relied upon by the plaintiff, upon its face states that Iselin at the time of making it supposed the wall was erected by Dickey, to whom Sandford, in 1815, conveyed the lot upon which his part of the wall stood. This repels the idea that Iselin was cognizant of the arrangement between Roulet and Sandford, and had reference to it. There is no evidence that Iselin knew that one half of the expense of the wall was not borne at the time it was built by the owners of the respective lots on which it stood, hence none pointing to any other than Iselin as the one to whom the wall was to be paid for. There is no pretense that the plaintiff is entitled to recover unless the provision in the deed to the defendants was intended for the benefit of the unpaid builder of the wall. The evidence is insufficient to justify such an inference, and the judgment should, therefore, be reversed.