## MATTHIAS BRAKELY *v.* ELIZABETH MARIA SHARP, HENRY SHARP, et al.

The owner of a large farm lying on both sides of a highway, and through which flowed a stream rising on the part lying above the highway, diverted the water by means of an aqueduct, for the use of his two dwellings, one above and the other below the road, and so arranged it that at the upper dwelling the whole water could be controlled and prevented from running to the lower one, and used the water in this manner for twenty-three years before his death. After his death, commissioners were appointed by the Orphans' Court to make partition of his land and assign dower, who assigned the land above the road partly to his widow, and partly to one of the heirs, and afterwards, by order of the court, sold and conveyed the land below the road, under which conveyance the complainant held, claiming the right to use the aqueduct to the same extent as used by its first owner, upon the ground of adverse possession, and of the conveyance by the commissioners. *Held*—

1. That no adverse possession could begin till the severance of the title by the commissioners.

2. That until such severance no easement could exist in the aqueduct.

3. That by a grant of land, easements necessary for its enjoyment are created *ex necessitate*, and pass by the grant, although not expressly named.

4. That by the setting off of the land above the road before the sale of that below, there was a severance of the unity of title, and those to whom it was set off took it free from any encumbrance of the easement, to the same extent as if the original owner had conveyed it to them without reserving the easement.

5. That by the commissioners' deed no title to the easement passed, there being no express grant of it, and it not being necessary for the enjoyment of the property; but had it been necessary, and in actual use at the time of the conveyance, then it would have passed, had there been no prior severance of the unity of title.

6. That if a former owner of the complainant's land, holding under the commissioners' deed, had made such expenditures in repairing the aqueduct as would create an equitable right in him to the enjoyment of his expenditures, the right was only personal, and could not be claimed by his grantee.

This was an injunction bill filed October 31st, 1851, upon which an injunction issued, and the defendants having answered, a motion to dissolve the injunction was argued at February Term, 1852. The facts, so far as necessary to a clear understanding of the case, appear in the opinion of the Chancellor.

*Sherrerd* and *S. R. Hamilton*, for complainant.

*Kennedy* and *P. D. Vroom*, for defendants.

THE CHANCELLOR. Upon the complainant filing his bill, on the 31st day of October last, an injunction was issued, by order of the Chancellor, restraining the defendants from interrupting the flow of water upon the complainant's land, through an artificial channel constructed for the purpose.

The defendants have answered, and ask for a dissolution of the injunction.

The case is, as briefly as it can well be stated, this : Christian Sharp was the owner of a valuable farm of about four hundred acres, situate and lying on the northwest and southeast side of the public road leading from Belvidere to Easton. On the southeast side of the road was his dwelling-house, and on the same side a distillery, which he carried on for many years. Running through the northwest part of the farm was a stream of water, taking its rise about three hundred yards above the public road, and losing itself in a farm below Mr. Sharp's.

In the year 1810, he placed bored logs or wooden pipes, from the head of the stream, and by them conveyed the water, for its more convenient use, to his dwelling-house and distillery. In 1813, he erected on the north side of

the road, a new dwelling-house, and so arranged the aqueduct as to supply the new dwelling with water. Near this new dwelling, and on the northwest side of the road, he placed in the pipes a fixture called an upright, with a metallic cock, by which he turned, at his pleasure, all the water running through the aqueduct, or let it pass down to the distillery and dwelling-house. By turning the cock, all the water would be discharged through it at the upright, thence to the public road referred to, thence down the road until it emptied into the natural water-course where it crossed the highway.

On the 3d of April, 1826, Sharp conveyed to the complainant one hundred and forty-three acres of land, lying on the southeast side of the farm, on which this stream of water, in its natural channel, flowed; and in the deed of conveyance was a covenant that the grantee might enter upon the lands of the grantor, and clear out the water-course, so as to remove any obstructions to its natural flow to the lands conveyed. This covenant has no reference whatever to the artificial water-course.

About the year 1835 Christian Sharp died intestate, leaving him surviving his widow, Elizabeth Maria Sharp, one of the defendants, and Henry Sharp, and some others of the defendants in the suit, his heirs-at-law.

Such proceedings were had in the Orphans' Court of the county of Warren, that the portion of the land lying on the northwest side of the road, and on which was situate the new dwelling-house, the aqueduct and spring of water was assigned, part to the widow for her dower, and the residue to Henry Sharp. Subsequently, by order of the same court, the commissioners, on the 16th day of November, 1837, sold to John Strader and William M'Kinney that portion of the land lying on the southeast side of the public road.

Through several mesne conveyances, the title to this land sold to Strader and M'Kinney became vested in the complainant. The date of the deed is not given in the pleadings. It must, however, have been subsequent to the third of March, 1842, the date of the deed to his immediate

grantor. I think Cainrel agreed it was dated the first of April, 1851.

The several deeds through which the land passed from the commissioners to the complainant are in the usual form, and, with the exception of that of the commissioners, are deeds with full covenants.

The distillery was abandoned some time before Sharp's death.

The bill alleges that the water had been used on the premises now the complainant's, through the log aqueduct, from the year 1810, by Christian Sharp, and by all who have held under him, up to the time it was interfered with by the defendants, on the first day of April, 1851, and that the aqueduct had been repaired during that time by the owners and tenants of the complainant's land.

The complainant insists that the deeds of conveyance under which he holds conveyed to the several grantees all the rights, liberties, privileges, hereditaments and appurtenances that the said Christian Sharp was seized and possessed of at the time of his death, and that the flow of water through the aqueduct was a necessary appurtenance to the said farm.

He claims the right to the use of the water when it is not needed on the land above the road, and not exhausted there through the upright for that purpose, and that he has a right to go upon the land of Elizabeth M. Sharp and Henry Sharp to repair the aqueduct. He also claims these privileges by virtue of the possession and enjoyment of those under whom he holds, for more than twenty years.

Can the complainant maintain these rights as an easement upon the lands of Elizabeth and Henry Sharp ? If so, he must claim this easement by one of two ways, or both : by grant, or adverse possession for twenty years, which implies a grant. To these two modes of acquiring an easement there has been, by some jurists, added that *by necessity*. As, where a man grants land in the middle of his field, by *necessity* a right of way to the land granted exists over the grantor's land. But this mode of acquisition may properly

be classed under the head of title, or right by grant. It flows by necessity from the grant—it is incident to the thing granted. It is the construction put by legal tribunals upon the grant, in conformity to the well-established principle of law that, where a man grants a thing, he grants with it everything necessary to its enjoyment. See note in 1 *Saund. Rep.* 323.*

In this case, there can be no pretence of an uninterrupted adverse possession and enjoyment by the complainant or of those under whom he holds, for a period of twenty years. The titles of the farm now owned and occupied by the complainant, and of that on which the aqueduct is constructed, were united in Christian Sharp. His title descended to his heirs-at-law, and there was no severance of the title until the commissioners set off the land above the road to the widow and Henry Sharp in 1835. Of course no adverse possession or enjoyment could have commenced until then.

Did the right to this easement pass by the deed from the commissioners to Strader and M'Kinney ? If it did, it now vests in the complainant by the subsequent conveyances, under which he holds his title.

The deed is in the usual form. It is a deed without covenants of warranty ; and it conveys all the right, title and interest in the land of which Christian Sharp died seized, together with all the privileges, hereditaments and appurtenances thereunto belonging.

It was insisted, on behalf of the defendants that, when the title was united in the heirs of Christian Sharp, there could be no such thing as an easement existing as applicable to this aqueduct. This, from the very definition of the term, must be so. An easement is a service or convenience which one neighbor has of another, without profit : as a

---

* A way of necessity, when the nature of it is considered, will be found to be nothing else but a way *by grant*. It derives its origin from a grant ; for there seems to be no difference when a thing is granted by *express words*, or when, by *operation of law*, it passes as incident to the grant. In the latter case it would be a superfluous and inoperative clause in the deed to convey the incident by express words of grant, being only *expressio corum quæ tacitæ insunt ;* therefore, in both cases, the *grant* is the foundation of the title.

right of way, water-course, or washing-place on another's ground. *Jacob's Law Dic., title "Easement."*

But, although a man can have no easement on his own land, yet, by the very severance of the title, and by his conveying a part of the land to another, he may create, *by necessity,* an easement in that part, the title to which remains in him. The familiar case of the man who sells land in the middle of his field, so that there can be no access to it except through the grantor's land, illustrates this : *ex necessitate,* an easement exists the moment he makes the grant, and the grantee has the advantage and convenience of a right of way over his grantor's land. It matters not by what word or words in the grant it is created, or whether we call it an easement by grant, by necessity, or by the operation of law, a court will declare it to exist.

If, while there was a unity of title in the heirs of Christian Sharp, they, or the commissioners appointed by law to divide the estate, (which, as to the principle involved, is the same thing,) had granted the land now owned by the complainant, with the water through this conduit in use at the time, the conduit would have passed by the grant, if necessary for the enjoyment of the property. And it matters not under what particular words in the grant it would have passed—whether under the word appurtenances, or *quasi* appurtenant, or not. Although it did not exist before, yet it would have been created by the grant, *ex necessitate.* The principle is the same as that which governs in reference to the right of way referred to. As to what this necessity may be, I would adopt the views of Lord Mansfield, in the case of *Morris* v. *Edgington,* 3 *Taunton's Rep.* 31, in which case it was decided a right of way was created by the grant, though not in express terms. He remarks : " I say nothing as to what is a way of necessity—I know not how it has been expounded—but it would not be a great stretch to call that a necessary way, without which the most convenient and reasonable mode of enjoying the premises could not be had." In this case of Morris *v.* Edgington, the court say that no way or other easement can subsist in land of which

there is a unity of possession. Yet their decision in the case was this: A lease demised a messuage consisting of two parts, separated by intervening reserved lands, subjected only to a specific right of way for the lessee to a third building for a specific purpose; which reservation, strictly interpreted, would preclude him from all access to the one part, which was accessible only by crossing the reserved land in one of two directions—the one, by entering it from the residue of the demised premises; the other, and far the more convenient, by entering it from a public street. *Held,* that the lessee was entitled to a way across the reserved land from the public street to that part.

In the case of *Blaines, lessee,* v. *Chambers,* 1 *S. & R.* 169, the court decided that, by a devise of a mill, with the appurtenances, the right to the use of the water, and the right to the piece of land which was used with the mill, passed.

In 5 *S. & R., Pickering* v. *Staples,* a water right passed by the word "appurtenances," which was considered as comprehensive of the water right, as if the privilege of using the water had been expressly inserted in the conveyance, even though the vendor declared, when he executed the conveyance, that he neither bought nor sold the water right.

In the case of the *New Ipswich Woolen Factory* v. *Batcheldor,* 3 *N. H. Rep.* 190, a grantor conveyed by deed a tract of land, described by metes and bounds, with a mill upon the same; and, at the time of the conveyance, there was a race-way, to conduct the water from the mill, running along the side of the natural stream, beyond the land granted, into other land of the grantor, and then discharging the water into the natural stream, and which race-way had been used with the mill several years, and was necessary to the convenience of the mill. It was held that the right to have the water flow off through the whole extent of the race-way passed as appurtenant to the mill. It was put on the ground of necessity. The judge says, " The case finds that the race-way was necessary for the convenient working of the mill."

See these cases, cited in *Angell on Water Courses* 44; *Leonard v. White*, 7 *Mass.* 8; 3 *Kent* 420; *U. S.* v. *Appleton*, 1 *Sum.* 492; *Story* v. *Ollin*, 12 *Mass.* 157; *Swamburgh*, 9 *Bug.* 305; *Compton*, 1 *Price* 27; *Robins* v. *Barnes*, *Hob.* 131; 1 *B. & P.* 374 (*note*); *Grant*, 17 *Mass.* 443; 1 *Sum.* 503; *Hewlin*, 7 *Dowl. & Ryl.* 783; *S. C.*, 5 *B. & C.* 221; *Bulst.* 339.

In the case of *Johnson* v. *Jordan*, 2 *Metcalf* 234, where a similar question arose, Chief Justice Shaw says it is a matter of contract, and must depend entirely upon the construction of the conveyance; and then the question recurs, what construction the court will put upon a conveyance, when the intention of the parties in this respect is not expressed in terms. He concludes it must be governed by the well-settled rule of construction, that the grant of any principal thing shall be taken to carry with it all that is necessary to the beneficial enjoyment of the thing granted, and which it is in the power of the grantor to convey.

10 *S. & R.* 63, *Strickler* v. *Todd.* By conveyance of a mill, the whole right of water enjoyed by the grantor as necessary to its use, passes along with it as a necessary incident.

*Shepherd's Touchstone* 89, says, by the grant of mills the waters, flood-gates, and the like, that are of necessary use to the mill, do pass.

Now, in these cases cited, no easements existed prior to the grants. None were expressly created by the grants, but they were necessary to the beneficial enjoyment of the thing granted, and the law created them. They were within the intent of the parties, and passed as incident to the thing granted.

*Comyn's Dig.*, vol. *IV.*, under title "*Grant*," *E* 11, what as incident? So by the grant of any thing *conceditur, et id sine quo res ipsa haberi non debet;* as, if one grants his trees, the grantee may enter upon his lands for the cutting down and carrying them away, *E* 9. By a grant *cum pertinentiis.* By the grant of a messuage, *cum pertinentiis,* a conduit, with water pipes to it, enjoyed any time, passes. So in *Bacon's Ab., title "Grant*," 4. Both Bacon and Comyn refer to the

case of *Nicholas* v. *Chamberlain*, 2 *Croke's Rep.* 121, where it was held by all the court upon demurrer, that if one erect a house and build a conduit thereto, in another part of his land, and convey water by pipes to the house, and afterwards sell the house with the appurtenances, excepting the land, or all the land to another, reserving to himself the house, the conduit and pipes pass with the house; because it is necessary, *et quasi* appendant thereto; and he shall have liberty by law to dig in the land for amending the pipes or making them new, as the case may require. So it is if a lessee for years of a house and land erect a conduit upon the land, and after the term determines, the lessor occupies them together for a time, and afterwards sells the house with the appurtenances to one and the land to another, the vendee shall have the conduit and pipes, and liberty to amend them. See, also, case of *Archer* v. *Bennett*, 1 *Levinz's Rep.* 131.

Whether, therefore, by the grant the easement passes, will, I think, depend upon the question whether it is necessary for the enjoyment of the thing granted, unless by express terms it is embraced in the grant, or unless, according to the technical definition of the term appurtenances, it is appurtenant to the land.

Let us apply the principle to the case in hand. It appears by the bill itself, that the main object of the conduit was for the convenience of the dwelling-house on the land of Maria and Henry Sharp, and that Christian Sharp himself, and those who have since held under him and occupied that dwelling, always used the water, in part, or the whole of it, at their pleasure, and without any reference to the buildings on the complainant's land. It is true, the use of the water thus conveyed is shown to be of convenience to the complainant, but by no means to approach that *necessity* referred to in the cases cited. The natural water-course, from the head of which the pipes are laid, runs through the complainant's land, and not far distant from his dwelling and other buildings; and it does not appear but that he may have the same benefit of the water for all the purposes for

which it is required, without receiving it through the artificial channel in question.

But again. Although there was a unity of title to both tracts of land in the heirs of Christian Sharp, it was severed when the commissioners set apart that portion of it on the northwest side of the road to the widow and Henry Sharp. Their rights and the encumbrances upon the land assigned them were the same precisely as if Christian Sharp had conveyed the land to them in his lifetime. Now, if Christian Sharp, in his lifetime, had conveyed to the defendants the lands they now hold, would he have had the easement now contended for, unless he had expressly, in his deed to them, reserved it? None of the cases referred to go this far, unless the one in 2 Croke. But I think in such case, Christian Sharp could not have claimed the easement; and for the reason that no man shall derogate from his own grant. And in the case of Swansborough v. Coventry, 9 Bing. 305, the C. J. remarks that upon this principle it is well established by the decided cases, that where the same person possesses a house having the actual use and enjoyment of certain lights, and also possesses the adjoining land, and sells the house to another person, although the lights be new, he cannot, nor can any one who claims under him, build upon the adjoining land, so as to obstruct or intercept the enjoyment of those lights. When, therefore, the commissioners assigned this land to the widow and Henry, they took it free from any such encumbrance as that now claimed; and the other heirs, in whom remained the title to the land on the southeast side of the road, or their grantees, could not claim the easement now set up by the complainant.

Independent of this view of the case, there is nothing in any of the matters set up by the complainant, which gives him any equitable claim to the interference of this court.

Admitting the fact that Hopeful Hepburn, while he owned the land now of the complainant, repaired the conduit; at

best, it was but a license which was revocable at pleasure; or if the expenditures made by him were of such a character as would create an equity entitling him to the enjoyment and benefit of his expenditures, it attached only to him personally, and cannot be claimed by his assigns. See cases cited in 2 *vol. Am. Lead. Cas.* 736.

But the bill itself alleges that Hopeful Hepburn re-laid the pipes with the *consent* of Elizabeth Maria Sharp and Henry Sharp. If it was with their consent, surely he or his grantees cannot take advantage and make use of that consent as an evidence of an existing legal right.

The complainant can claim nothing under the idea that a valuable consideration was paid for the right now claimed by Strader and M'Kinney when they purchased of the commissioners. It is not alleged that they supposed they were purchasing any such right; and the answer states that in order that no misapprehension might exist, one of the commissioners, on the day of sale, requested that the water might be shut off from the pipes leading to the complainant's land; that it was in fact shut off, and was not running there on that day.

It is incidently mentioned in the bill, that by drawing off the water at the fixture called the upright, by which its flow through the pipes to the complainant's land is prevented, it commingles with the drippings from the barnyard, runs down the public road, and emptying into the main channel, so corrupts the water as to render it unfit for use on the complainant's land. The complainant has a right to the flow of the water through the natural channel, subject to such use of it by the defendants, Elizabeth and Henry Sharp, as not to deprive the complainant of its benefits. But the bill is not framed for protection in such a case.

It appears that Butler Thomas and William S. Creveling, two of the defendants, have no interest in the land on which the easement is claimed; that they were the active individuals in taking up the logs and interrupting the flow of the water. They admit they were volunteers and acted

without authority from any one, and the other defendants deny ever having authorized them to commit the acts complained of.

The injunction as to Thomas and Creveling is retained, and as to the other defendants, let an order be made dissolving the injunction.

CITED *in Brakely* v. *Sharp*, 2 *Stock.* 209 ; *Fetters* v. *Humphreys*, 3 *C. E. Gr.* 263.