FETTERS *vs.* HUMPHREYS AND WIFE.†

1. Where the owner of lands devised the same in two parcels, one to A, and the other to B, the fact that he was accustomed in his lifetime to use an alley upon the land devised to B, as a means of egress from his stable upon the land devised to A, to the street, will not create an easement in B's land in favor of A, he being able to construct a way over the parcel devised to him, from the stable to the street, and such easement, therefore, not being *necessary* to the beneficial enjoyment of his land.

2. Discontinuous easements not constantly apparent, are continued or created by a severance, only when they are necessary, and that necessity cannot be obviated by a substitute constructed on or over the dominant premises.

3. The leading cases examined and commented upon.

*Mr. Carpenter,* for complainant.

*Mr. J. B. Dayton,* for defendants.

THE CHANCELLOR.

Richard Fetters, the husband of the complainant, and the father of the defendant, Eliza Humphreys, died in August, 1863, seized of considerable real property in the city of Camden. He occupied, as his dwelling, a house on the south side of Market street, built on a lot forty feet wide and one hundred and eighty feet deep. The west side of this lot was one hundred and twenty feet east of, and parallel to the

* Decree affirmed, 4 *C. E. Gr.* 503.
† CITED *in Denton* v. *Leddell,* 8 *C. E. Gr.* 67.

east side of Third street. The dwelling-house was built on the east half of the lot, twenty feet wide, and the other half was occupied by an ornamental flower garden, which the deceased, who was a florist by occupation, had for years kept up with great care and expense. The front along the street was enclosed by an open iron fence.

On the rear of this lot there was a frame stable, worth about three hundred dollars, which had been placed there by the deceased, and which he used for his horse and carriage, and his florist's wagon. The only egress from this stable was through a lane or alley running from the southwest corner of the lot westwardly across other lands owned by him to Third street. This alley was ten feet wide, and run between and adjoined two brick houses owned by him, standing on Third street, with side-doors opening on the alley. On both sides of this alley he formerly had kept green-houses, to which it gave access. These, after he had discontinued active business, had been removed.

In this situation of the premises, Richard Fetters, by his will dated March 31st, 1863, devised the house and lot to his wife, the complainant, for her life; and the residue of his property to his children. By a division made according to the provisions of his will, the part of his property between the rear of the homestead lot and Third street, which included the alley and the two brick houses on each side of it fronting on Third street, was allotted to, and became the property of, the defendant, Eliza Humphreys. The defendants being advised that this property was held by her under the devise in the will free from any easement of passing over it from the homestead lot, shut up the rear of the alley and prevented the complainant, and her tenant of the stable, from passing through it to Third street. There is no access from the complainant's stable to any public street, except through this alley, or by cutting a way through the ornamental garden along side of the house and the iron fence that separates it from the street.

The complainant now seeks, by injunction, to restrain the

defendants from obstructing her and her tenant and tenants, from passing over and along said alley and passage-way to and from said stable and the street.

It is clear that a man can have no easement in his own property, and that in the life of the testator there was no easement belonging to the homestead lot to pass out to Third street over this alley. An easement, by its definition, is a right in the lands of another. His right to pass out this way was perfect, as owner of the land over which he passed; it was not a right appurtenant to the homestead lot. He bought the lots from different owners, and no such right existed at his purchase. If it had, the unity of title would have extinguished it.

A privilege or right attached to one tenement or parcel of land, to enjoy some benefit in or over another tenement or parcel, is called an easement of the dominant tenement, to which it belongs, and a servitude upon the servient tenement, or that in which it exists. These easements are either apparent and continuous, or not so. Apparent or continuous easements are those depending upon some artificial structure upon, or natural formation of, the servient tenement, obvious and permanent, which constitutes the easement or is the means of enjoying it; as the bed of a running stream, an overhanging roof, a pipe for conveying water, a drain, or a sewer. Non-apparent or non-continuous easements are such that have no means specially constructed or appropriated to their enjoyment, and that are enjoyed at intervals, leaving between these intervals no visible sign of their existence; such as a right of way, or right of drawing a seine upon the shore.

In some cases easements are created by implication, where lands held by the same owner are sold or devised in different parcels, or where lands held in common are partitioned. If, until the time of severance of title, there has been a way or drain, or other matter in the nature of an easement, from one of the parcels through the other, established and kept up by the common owner of both, and necessary for the beneficial

enjoyment of the dominant parcel, then an easement is created by such sale, devise, or partition.

This principle was approved and adopted by this court in the judgments of Chancellor Williamson, in the case of *Brakely* v. *Sharp*, reported in 1 *Stockt.* 9, and 2 *Stockt.* 206; and his opinion is sustained by the authorities cited by him, and other cases in England and this country, decided both before and since. The result arrived at on the final hearing of the cause was different from that on the motion to dissolve the injunction, but this arose from the different application of another rule. The opinion of the Chancellor on the point now in question, was the same on both arguments.

The exception to the rule, which the Chancellor attempted to apply on the argument of the injunction, is this: that if the common owner convey the servient tenement, retaining the dominant, he is held to convey all his right in it, including the right to enjoy the privileges before enjoyed upon it for the benefit of the dominant tenement, and it is conveyed free of any servitude. But the exception is too broadly stated, and is not sustained by the authority cited for it; and by most of the authorities, it is confined only to non-apparent easements, such as rights of way. And it is held that apparent or continuous easements, such as the use of water-pipes and sewers in existence, will be created by implication upon the conveyance of the servient tenement by the common owner, he retaining the dominant tenement. This is the doctrine in *Nicholas* v. *Chamberlain, Cro. Jac.* 150, cited as the leading case on the whole subject, and in *Pyer* v. *Carter*, 1 *Hurlst. & Nor.* 916. Judge Selden, in delivering the opinion of the Court of Appeals in New York, in *Lampman* v. *Milks*, 21 *N. Y. Rep.* 506, expressly holds it. He says: by a sale, "easments or servitudes are created corresponding to the benefits and burthens mutually existing at the time of the sale. This is not a rule for the benefit of *purchasers only*, but is entirely reciprocal. Hence if, instead of a benefit conferred, a burthen has been imposed upon the portion sold, the purchaser, provided the marks of this bur-

then are open and visible, takes the property with the servi-. tude upon it." And on page 516, he says : "Those easements which are discontinuous pass upon severance of tenements by the owner, only when they are absolutely necessary to the enjoyment of the property conveyed." *Gale & Whatley*, in their treatise on *Easements, p.* 40, lay down the rule with the same qualification.

The reasoning of the Supreme Court of Massachusetts, in *Johnson* v. *Jordan*, 2 *Metc.* 240, takes the other view of the case. But it is not supported by the authorities cited, and had no bearing upon the decision of the case, which turned upon the fact that the easement claimed was not necessary to the enjoyment of the tenement conveyed, which was the dominant and not the servient tenement.

In the case of *Stuyvesant* v. *Woodruff*, 1 *Zab.* 133, the parcels were conveyed out of the original owners of both, by commissioners for partition, and therefore, are to be considered as conveyed at the same time. The easement claimed was a right of way at the southwest corner of Stuyvesant's land, over the northwest corner of Woodruff's lot, because the former owner of the whole, before the severance of the title, had been accustomed to drive out upon the public road in that direction. This was not an apparent or continuous easement, nor was it necessary to the enjoyment of the lot of Stuyvesant, because he could drive out upon the public road over the part of his own premises next adjoining to that part of Woodruff's lot over which the easement was claimed. And it was held that no easement was retained upon severance of title. The ruling in that case is perfectly consistent with that in *Brakely* v. *Sharp*, and the decisions upon which it is founded.

In the cases of *Pyer* v. *Carter* and *Lampman* v. *Milks*, *supra*, it was held that the easement was created by grant, although not *necessary* to the enjoyment of the property, and although another could be created on the land granted, at a small expense ; and that the grantee was entitled to the pro-

perty as it was enjoyed at the time of the grant. The contrary doctrine is held by the Massachusetts cases. *Nichols* v. *Luce*, 24 *Pick.* 102; *Johnson* v. *Jordan*, 2 *Metc.* 234; *Thayer* v. *Payne*, 2 *Cush.* 327. These all hold that no easement is created by implication, except in case of necessity.

And in New Jersey, the decision of the Supreme Court in *Stuyvesant* v. *Woodruff*, and the opinion of the Chancellor in *Brakely* v. *Sharp*, hold that no easement will arise by such implication, unless necessary to the beneficial enjoyment of the property. And this rule is founded on reason and good sense, as well as upon these authorities, which I am not at liberty to disregard while sitting here.

The complainant then, is not entitled to the use of this way unless necessary to the beneficial enjoyment of the property devised to her for life. It is not absolutely necessary, for she can open a way to Market street over the land devised to her, and thus have access to the barn. It will materially injure the property to open this way, and probably the opening would be attended with some expense. In the case of drains and water-pipes, and apparent and continuous easements of that nature, the fact that others may be substituted for them on the premises conveyed, at a reasonable cost, has been held in some cases not to affect the right. *Pyer* v. *Carter*, 1 *Hurlst. & Nor.* 919. Although the contrary doctrine is laid down in *Johnson* v. *Jordan*, 2 *Metc.* 234.

But discontinuous easements, not constantly apparent, are only continued or created by a severance, when they are necessary, and that necessity cannot be obviated by a substitute constructed on or over the dominant premises. *Lampman* v. *Milks*, 21 *N. Y. Rep.* 506; *Thayer* v. *Payne*, 2 *Cush.* 332; *Pheysey* v. *Vicary*, 16 *M. & W.* 484.

The case of the *United States* v. *Appleton*, 1 *Sum.* 492, is the only authority that I find against this rule. But Justice Story, in his opinion, was evidently guided by the cases on continuous and apparent easements, to which alone he refers, and upon which he relies. His attention was not called to

the well established distinction between the two kinds of easements.

This difference in the rule, as applied to the two classes of easements, is founded upon reason and the nature of the easement itself. A continuous or apparent easement is either a fixture, or it is enjoyed by means of a fixture, upon the land itself. There is something visible by which it may be known to a purchaser, as an overhanging roof, open windows, a sewer, or a water-pipe, actually engaged in fulfilling their duties. A right of way, or discontinuous easement of any kind, is only exercised at intervals, and is a latent encumbrance or claim, the very existence of which may depend on uncertain and doubtful testimony. In other respects, to establish the creation of a right of way by implication on a conveyance of property, because a former occupier was in the habit of passing out in a certain direction, would be productive of great inconvenience, and would work injustice, especially in city property. If A should purchase of B a city lot, adjoining the house lot of B, and it should turn out that the servants of B had been in the habit, by B's direction, of crossing over B's lot diagonally to the street, from a gate in the side of the house lot retained, A could not build on the front of the lot. Such use, until and at the time of sale, would create an easement over the lot sold, by implication. The same result would follow in case of partition, or a sale in partition. The rule as established in the case of permanent apparent easements is, I think, of very doubtful expediency. But this is the law as I find it. I do not feel inclined to extend it.

The doubts, difficulties, confusion, and indecision in the minds of the Barons of Exchequer, as exhibited in their attempt to apply the rule to a right of way, almost a way of necessity, in *Pheysey* v. *Vicary*, 16 *M. & W.* 484, shows the inexpediency and impracticability of the rule in case of other than apparent and continuous easements, except when required by absolute necessity.

The property of the complainant could be better and more

beneficially enjoyed by the use of this alley as it was used by the testator in his lifetime, but it is not necessary to the beneficial enjoyment of it. The right of way, therefore, cannot arise by implication from the devise to her.

The bill must be dismissed.*

---

* Decree affirmed, 4 *C. E. Gr.* 471.