MORRIS HADDEN, Appellant, *v.* DAVID H. SHOUTZ, Appellee.

APPEAL FROM KANE.

Two parties occupied a portion of the public lands, on which a dam and mill had been erected; one conveyed to the other by metes and bounds six acres of the land, with the hereditaments and appurtenances thereunto belonging; the parties had agreed that the purchaser from the government of this land should convey his recognized portion of it to the other; the water had flowed over the land of both, by reason of the structure of the dam: — *Held*, that the right to flow the land was an appurtenance, and was so understood at the time of the conveyance.

The court will construe a grant by considering the state of things and the condition of things in view of the parties at the time it was made.

THIS was a bill filed to restrain Shoutz from building a dam across Big Rock Creek, in Kane county, because it would cause the water to flow the land of Hadden. A dam had been constructed at or near the same place, which was about to be replaced by another. The Circuit Court of Kane County, February term, 1854, J. G. WILSON, Judge, presiding, dismissed the bill.

BLACKWELL and BECKWITH, for appellant.

T. L. DICKEY, for appellee.

CATON, J. The decision of this case must depend upon the construction and effect to be given to the deed of the 25th of October, 1845, made by Hadden and wife to Shoutz. That deed conveys by metes and bounds a little more than six acres of land, " together with all and singular the hereditaments and appurtenances thereunto belonging, or in anywise appertaining." In 1836 a mill and dam had been erected upon Big Rock Creek, which runs through the quarter section, of which the premises are a part, and through the premises. The mill and dam are situated upon the premises conveyed; and at the time of the conveyance, and for a long time before, the dam flowed the water of the creek back upon a portion of the quarter not conveyed, and which the grantor also owned at the time of the conveyance. The right to flow the water back above the line of the land conveyed, is necessary to the enjoyment of the mill, as such. And the question is, whether such right passes by the grant as appurtenant to the premises conveyed. It was

49*

not denied upon the argument, and the law is too well settled to admit of denial, that where one grants a mill or other improvement, for the enjoyment of which an easement is used over or upon other lands belonging to the grantor, such easement passes by the grant as an appurtenant to the thing granted. Pickering *v.* Slopler, 5 Serg. & Rawle, 107; Factory *v.* Batchelder, 3 N. H. R. 190; Kent *v.* White, 10 Pick. 138; Story *v.* Odin, 12 Mass. 157; Hazard *v.* Robinson, 3 Mason, 272; United States *v.* Appleton, 1 Sumn. 492; Morris *v.* Edgington, 3 Taunt. 24. But in this case it was insisted that as the mill is not mentioned in the deed, but the land is granted by metes and bounds only, the mill and its appurtenances were not in the contemplation of the parties when the conveyance was made, and there was no intention to pass any thing but the land itself, and that which was directly attached to and formed a part of it. Instances are undoubtedly to be met with where such a deed may receive such a construction. In construing deeds as other writings, courts must seek to ascertain and give effect to the intention of the parties; and for that purpose they may and will take notice of attendant circumstances, and by them determine the intention of the parties. Thus, in the case of Wilcox *v.* McGhee, 11 Ill. 381, this court held, that where a settler built a' mill upon the public lands, and by his dam flowed the water back upon adjoining lands, by purchasing from the government the tract upon which the mill was situated, he did not acquire the right to continue to inundate the adjoining government land which he did not purchase. In that case the court said: " The manner in which the public lands are disposed of, the character of the parties to the grant, and its subject-matter, are all circumstances proper for consideration in arriving at the intention of the parties." And in view of these considerations, we held in that case that the grant was made without reference to any improvement which the purchaser had previously put upon the land, and that the government intended to grant nothing beyond the land itself. In that case, it could not be supposed that the grantor knew of the existence of the mill and the overflowing of the other lands, and there could have been no intention to perpetuate such a right. The accompanying circumstances in that case rebutted any such intention. The law'must give a common sense construction to grants, and consider the state of things, and the considerations in view of the ,parties at the time the grant is made, which moves them to its execution and acceptance. In United States *v.* Appleton, 1 Sumn. 492, Story, J., said: " It has been very correctly stated at the bar, that in the construction of grants, the courts ought

Hadden *v.* Shoutz.

to take into consideration the circumstances attendant upon the transaction, the particular situation of the parties, the state of the country, and the state of the thing granted, for the purpose of ascertaining the intention of the parties. In truth every grant of a thing naturally and necessarily imports a grant of it as it actually exists, unless the contrary is provided for." In this case the grant is of the land by metes and bounds, upon which the mill and dam were situated, and in use, with its appurtenances. The mill and dam did not pass as an appurtenant to the land, but as a part of the land itself, as much as the soil upon which they were situated, and the right to enjoy them as they were then situated and enjoyed, passed as an appurtenant to the thing granted. The land without the mill was of but little value. The value of the thing granted consisted principally in the mill, and the right to use and enjoy it. The grantor was there and knew this, and was well aware that the grantee expected that he was acquiring the right to use it as it was then enjoyed. The fact that he took a deed of the land which conveyed to him the mill without its being particularly mentioned in the deed, by no means indicates that no importance was attached to the mill, and that the right to enjoy it as such was not in the contemplation of the parties. Suppose a town or city lot is conveyed by the description of its number only, upon which a dwelling-house is situated; would it be denied that the appurtenances, such as water pipes passing through an adjoining lot, did not pass by the grant as much as if the house had been mentioned in the deed? In that case, as in this, the purchase is made as much for the improvement which is on the land as for the land itself. But here it is said, that the insignificant consideration mentioned in the deed shows that the mill and the right to use it were not taken into consideration when the grant was made. Unexplained, this circumstance might possibly have that tendency, but the explanation of the attendant circumstances is ample to show that both parties did expect that not only the mill but the right to use it as it had previously been used, was conveyed. Even before the time of the government surveys of this land, this mill and dam had been erected, and the water flowed back upon the land above, upon which the grantor had made a claim and improvement. The grantee held and enjoyed the mill as an improvement upon the public land, and as against the grantor and all the world, except the government, he held and enjoyed it rightfully, and was protected in that enjoyment by the laws of the State. No complaint appears to have been made of such enjoyment by the grantor or any one else. In this condition of things the land

was brought into market by the government, and the right of each settler to purchase his improvement, as it then existed, with the rights and privileges appurtenant thereto, was expressly recognized, as it appears from the testimony of Sears, not only by both these parties, but by all the other settlers in the neighborhood; and it was expressly agreed among them, that when one settler entered a piece of land which embraced another's improvement, that he should convey to him his portion of the tract thus entered, upon his paying his proportion of the purchase-money. Under this arrangement the complainant entered the land embracing the defendant's improvement, the full extent and enjoyment of which he well knew, and conveyed to him the portion of the tract containing the mill and dam which he knew he had for years held and enjoyed as an improvement upon the public land, and in order to such enjoyment he knew that he always had, and must necessarily flow back the water upon the land above, which was embraced within his own claim and improvement. He had always acquiesced in this right, while all their titles consisted alone in settlers' claims; and it was the undoubted expectation of both parties that each should continue to enjoy their improvements after the purchase from the government as before. Suppose the defendant had entered the tract of land embracing the improvements of both under the understanding which the parties had on the subject, and had then conveyed to the complainant his portion of the lot by metes and bounds, with its appurtenances, embracing in such conveyance the land which his pond overflowed, the law is well settled, that he would not, by such conveyance, deprive himself of the right to maintain his dam to the same height it was at the time of the conveyance, and to enjoy his mill precisely as he had always done before. The right to overflow the land was not a parcel of the land conveyed, but was an easement growing out of it and appurtenant to the mill below, and would not pass by a conveyance of the land above until it should become abandoned, when it would cease to be such appurtenant, and the right would become extinct. Hazard v. Robinson, 5 Mason, 272. If this right would have been continued in the defendant had he entered the land and conveyed to the complainant his portion, then the same consequence should follow, when, by the consent of both parties, the complainant entered the land and conveyed to the defendant his proportion. Supposing good faith to be observed by both, it was immaterial which entered the land and conveyed to the other, for it was the intention of both to attain the same end, whichever should enter the land; and it was the intention of both that the title

should be so settled that each should continue to enjoy his improvements as he had made them, and had previously enjoyed them.

I have thus adverted to the attendant circumstances of this conveyance, to see whether there was any thing in those circumstances showing that it was the intention of the parties to grant nothing but the naked land itself, contained within the description in the deed, or whether it was the intention of the parties that the ordinary incidents which the law, at least *primâ facie*, attaches to such a conveyance, should attend it. These circumstances clearly show that it was the positive and affirmative intention of both parties that all the rights and privileges should pass by this deed, which the law presumes in the absence of such proof, they intended should be conveyed. Here the proof of intention, and the presumptions of law, are coincident.

The decree of the circuit court must be affirmed.

*Decree affirmed.*