## JAMES B. THOMAS

*v.*

## HENRY WIGGERS.

1. CONSTRUCTION OF WRITTEN CONTRACTS — *by what means the intention of the parties may be ascertained.* In giving a construction to a written contract, it is always proper, when the writing is not specific, to ascertain such extrinsic facts as the parties had in view at the time the contract was made, in order to ascertain their true meaning.

2. The rule that parol testimony is not admissible to add to or vary the terms of a written instrument, is not violated by the admission of parol testimony to show the condition of the property which is the subject of the contract, with a view to arrive at the true intent of the parties in the terms used by them.

3. So, where the owner of a building, who occupied a part of it, and in which he had a steam engine in use, leased another part of the building to a party for a purpose that required the use of steam, the lease providing that the lessee should have a certain portion of the building, "together with one-half of the steam power produced by the then present therein located steam engine, or one of equal capacity, to be kept in motion by the lessor ten hours each day," it was *held*, in an action by the tenant against his landlord, to recover damages for the destruction by the latter of the pipe by means of which the former obtained his supply of steam from the engine, that it was competent for the plaintiff to prove that he had occupied the premises mentioned in the lease for more than a year immediately preceding the execution thereof, under other leases from the defendant, oral and written, and had used the steam in a certain manner which was supplied to him by means of the pipe which the defendant had destroyed.

4. While it is true, the written contract should govern, still as the intention of the parties as to what facilities and appurtenances were to be secured

to the tenant in carrying on his business, must be reached, that could be done in no better way than by showing a previous holding by the tenant, and what he enjoyed under it, and the necessity of the facilities of which he had been deprived, for carrying on his business.

5. LANDLORD AND TENANT — *right of the latter to the "appurtenances," and what will pass thereunder.* It appeared that the tenant in this case, under previous holdings, had used the exhaust steam from the engine, which was conducted by means of a pipe connected with the exhaust pipe of the engine to a steamer used by the tenant, and which was essential to the carrying on of his business; and it was *held*, that, under the lease mentioned, giving him " one-half the steam power," he was entitled to the use of the exhaust steam, as he had previously used it, and was using it at the time this contract was made, together with all the facilities connected therewith, and that they passed to him under the term " appurtenances."

6. ACTION — *remedy of the tenant in case the landlord deprives him of the use of such facilities.* If the landlord deprives the tenant of his proper share of the steam to which he is entitled under his contract, the latter may institute his suit against the former and recover damages therefor.

7. ALLEGATIONS AND PROOFS, *in such case.* And where the tenant, in such suit, declares for the injury resulting from being deprived of the use of the exhaust steam, the question whether the exhaust steam is the same as "steam power" is not involved, as the *gravamen* of the action is not the loss of motive power, but of the exhaust steam, to which the tenant was entitled under his contract for "steam power," when read in the light of the circumstances attending his previous holdings.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

The opinion of the court contains a statement of the case.

Mr. C. W. COLEHOUR and Messrs. BORDEN & SPAFFORD, for the plaintiff in error.

This was an action by a lessee against his lessor, to recover damages alleged to have resulted to the plaintiff by reason of being deprived by the defendant of certain facilities which the lessee had a right to enjoy as appurtenant to the premises leased.

It is contended on the part of the lessee, who is the plaintiff in error, that this lease should be read in the light of circumstances connected with a previous holding by the tenant of the same premises, from the same lessor, to ascertain the true

meaning of the parties as to what should pass as appurtenant to the premises, and these circumstances may be shown by parol. *Hadden* v. *Shoutz*, 15 Ill. 581; *U. S.* v. *Appleton*, 1 Sumn. 492; *Barrett* v. *Stow*, 15 Ill. 423; *Cook* v. *Whiting*, 16 id. 483; *Doe* v. *Burt*, 1 T. R. 704; 1 Spencer Eq. Jur. 559; *Huttermeier* v. *Albro*, 18 N. Y. 51; *Lampman* v. *Milks*, 21 id. 509; *Nicholas* v. *Chamberlain*, Cro. Jac. 121; *Atkins* v. *Bordman*, 2 Metcalf, 463.

Mr. H. H. HAAFF, for the defendant in error.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action brought in the Cook Circuit Court, by James B. Thomas against Henry Wiggers, for wrongfully and maliciously cutting off, tearing away and stopping certain steam power, with the appurtenances, which Thomas had leased of Wiggers.

The gist of the action can be well understood by the fourth and fifth counts of the declaration. They are as follows:

The fourth count states, that said plaintiff, before and at the time of the committing of the grievances next thereinafter mentioned, was in the use, occupation and possession of a certain steam pipe, which extended from a steam boiler and engine in the use and occupation of which plaintiff is and was interested, being located in the frame building Nos. 353 and 355 South Wells street, Chicago, in said county, in and by which steam pipe the plaintiff steamed, softened and seasoned his lumber, boards and trimmed wood, used in his business of making children's wagons, etc. Yet that defendant, well knowing the premises, but contriving and wrongfully, etc., intending to injure, prejudice, etc., said plaintiff in his right, interest and property in said goods and chattels, and to deprive him of the benefit and advantage thereof, while said plaintiff was in the use, occupation and possession thereof, to wit, on 13th of June, 1864, at Chicago, in the county aforesaid, wrongfully, maliciously and unjustly broke, damaged, cut away, removed, etc., the same; and said plaintiff thereby hath been and now is

greatly injured, prejudiced, etc., in his said right, interest and possession in and to the same, to wit, at said Chicago.

The fifth count states, that said plaintiff, before and at the time of the committing of the grievances thereinafter mentioned, was in the lawful use and occupation of a steam pipe and the steam passing through said pipe, in and about his business of manufacturing children's carriages, etc., at said Chicago, and that he used said pipe and the steam passing through it, in and about steaming, softening and bending the wood and lumber used in his business, and that the said pipe and steam passing through it were necessary to the plaintiff's said business; that the same were of the value, to wit, of $1,000, and had been before then let to hire to said plaintiff for, to wit, five years, to end May 1, 1868; that they were in the use, occupation and possession of said plaintiff, and were a part of the appurtenances of the premises and building, being the one-half of the building Nos. 353 and 355 South Wells street, Chicago, with one-half the steam power produced by the steam-engine and boiler located in the west half of said building, at the time of the grievances thereinafter mentioned, in the lawful use and occupation of plaintiff under a lease from defendant. Yet that defendant, well knowing the premises, but contriving and wrongfully, etc., intending to injure, aggrieve, etc., said plaintiff in his said leasehold estate and interest in said steam pipe and the steam passing through it, while the same were so let to and in the lawful possession and use of said plaintiff, and necessary to him in his said business, and not injuring said defendant, to wit, on the 13th of June, 1864, at said Chicago, wrongfully, unjustly and maliciously cut away, vacated, destroyed and removed said steam pipe and steam passing through the same, and thereby said plaintiff has been and is greatly injured, etc., in his leasehold estate and interest in said steam pipe and the said steam passing through it, to wit, at Chicago, etc.

On the trial, and before any witnesses were called, the plaintiff caused the following order to be entered on the record:

"And now comes the said plaintiff, James B. Thomas, in

this cause, in open court, and as to all the trespasses in the sixth count in said declaration, or in any other part of said declaration named, other than the said cutting off of the steam pipe in and by which he, plaintiff, steamed, seasoned and soft-ened his wood used in and about his said business, and as to all claim for damages under said declaration, or any count thereof, other than such as have proceeded from the deprivation and withholding by said defendant from him, said plaintiff, of the steam, necessary in and about the steaming, softening and seasoning of wood used in his, said plaintiff's, business, hereby enters a *nolle prosequi.*"

A trial by jury was had, and a verdict rendered for the defendant. A motion was made for a new trial, which was denied, and exception taken, and judgment entered on the ver-dict against the plaintiff for the costs. To reverse this judg-ment this writ of error is prosecuted and the following assigned as errors :

Because the court excluded evidence offered in behalf of the plaintiff, which should have been admitted.

Because the court admitted evidence on the part of the defendant, which should have been excluded.

Because of the refusal by the court to give to the jury the instructions asked for, in behalf of the plaintiff, and each of them.

Because the court gave the instructions to the jury, which were given on the part of the court, and each of them.

Because the verdict was against the law and the evidence, and each of them.

Because of the refusal by the court to grant a new trial for the reasons alleged.

Because the court refused to grant a new trial upon the ground of newly discovered testimony.

We shall dispose of such of these errors as seem to us important, and to do so, it becomes necessary to understand, clearly, the nature of the contract between these parties.

It appears from the record, that Wiggers was the owner of certain buildings on South Wells street, known as numbers 353 and 355, in one room of which he carried on the business of making mirror and picture frames. The other room he leased to the plaintiff for the term of five years from the first day of May, 1863, the lease being dated March 30, 1863, in which plaintiff carried on the manufacture of children's wagons, rocking-horses, sleighs, and such like toys. The machinery in both rooms was driven by steam power, the engine being located in the room occupied by defendant. The plaintiff was occupying the premises at the date of the lease, and had occupied them as they then were, under oral and written leases from the defendant, for months previous. The lease contained these clauses: " all the west half of the two-story frame building, known as No. 353 and No. 355, South Wells street, in the city of Chicago, together with one-half of the steam power produced by the present therein located steam-engine, or one of equal capacity, to be kept in motion by Wiggers ten hours each day, Sundays excepted, or excepting time for necessary repairs, with not to exceed seventy pounds of steam pressure; to have and to hold the said above described premises, with the appurtenances, to the plaintiff, his executors, etc., from the first day of May, 1863, until the first day of May, 1868, being the term of five years, at an annual rent of four hundred and seventy-five dollars, payable in monthly installments in advance." The plaintiff further agreed to pay, in addition to this rent, all water rents levied or charged on the premises during the continuance of his lease.

At the date of this lease, and long previous, while the premises were occupied by the plaintiff, he procured a pipe and stop-cock, which was fitted to the exhaust pipe of the engine, and was extended to a wooden box or steamer, used by the plaintiff for softening, by steam, his wood and materials to fit them for bending, and into which the exhaust steam was con-

ducted by means of this pipe. This steam box was indispensable to the plaintiff in his business. The charge was, that the defendant unlawfully cut this pipe, so that the plaintiff lost the benefit of the exhaust steam.

The diagram annexed will show the condition of the premises at the date of the lease, and when occupied by plaintiff in error prior thereto :

ALLEY.

BACK YARD.      PRIVY.

O HYDRANT.

ENGINE.

Point where Steam Pipe was cut.      Exhaust Pipe.

DEFENDANT'S PART OF SHOP.

Line of Shop Building.

Dotted line, on each side, is line of Lot.

STEAMER.

PLAINTIFF'S PART OF SHOP.

No. 353.          No. 355.

SOUTH WELLS STREET.

On the trial, the plaintiff proposed to show, that for more than a year immediately preceding the execution of this agreement, under leases from the defendant, oral and written, he had been in the uninterrupted and undisputed use and enjoyment of this steamer, and of the pipe connecting the same with the exhaust pipe of ·the engine, and of the necessary exhaust steam from this exhaust pipe, which the court ruled out, and to which exception was taken, and that is the first error assigned.

We are at a loss to perceive the ground of objection. While it is true, this controversy must be governed by the written contract of March 30, 1863, still, as the intention and design of the parties entering into it must be reached, we see no better mode by which that could be done, than by showing a previous holding of the premises, and what the plaintiff enjoyed under it. The fact that he had used this exhaust steam and steamer, under his former contracts, would be some evidence of the privileges he was to possess and enjoy under that of the contract then being made. Although that contract must control, still it was proper to show the inducements which must have operated with the plaintiff to make it. In all contracts, the intention of the parties is to be regarded, and this is gathered from the terms of the contract and the attendant circumstances. Now if the plaintiff occupied these premises months before, and up to the time of signing the contract in question, and they then contained the necessary facilities and appurtenances for carrying on his business, and without which he could not carry it on, they being indispensable, it is a fair presumption, it was the intention of both parties, that the facilities should be continued during the term created by the new contract, and this view does not, in any sense, trench upon the rule that a written contract cannot be explained or varied by parol. It was held by this court in the case of *Hadden* v. *Shoutz*, 15 Ill. 581, cited by plaintiff in error, that a grant will be construed by considering the condition of things in view of the parties at time the grant was made. This was a case where two parties occupied a portion of the public lands, on which a dam and mill had been erected. On the 25th of October, 1845, Hadden and wife conveyed to Shoutz, by metes and bounds, about six acres of the land, " together with all and singular the hereditaments and appurtenances thereto belonging." Before that time a mill and dam had been erected upon a stream running through the quarter section of which the premises conveyed were a part, and through the premises. The mill and dam were upon the land conveyed, and at the time of the conveyance, and for a long

time before, the dam flowed the water of the creek back upon a portion of the quarter section not conveyed, and which the grantor also owned at the time of the conveyance. The right to flow the water back above the line of the land conveyed, was necessary to the enjoyment of the mill as a mill. The court say the mill and dam did not pass as an appurtenant to the land, but as a part of the land itself, as much as the soil upon which they were situated, and the right to enjoy them, as they were *then situated and enjoyed*, passed as an appurtenance to the thing granted.

The land without the mill was but of little value. The value of the thing granted consisted principally in the mill, and the right to use and enjoy it. The grantor was there and knew this, and was well aware that the grantee expected that he was acquiring the right to use it as it was then enjoyed.

The case of *United States* v. *Appleton,* 1 Sumner, 492, is cited with approbation by the court, in which it was held, that, in the construction of grants, the courts ought to take into consideration the circumstances attendant upon the transaction, the particular situation of the parties, the state of the country, and the state *of the thing granted,* for the purpose of ascertaining the intention of the parties. In truth, every grant of a thing naturally and necessarily imports a grant of it as it actually exists, unless the contrary is provided for.

Applying the principles here maintained, to the case before us, we can see no difference. As in the case of the mill, so in this, the value of the thing granted to the plaintiff consisted in the room and steam power as a motive power, and in the use of the exhaust steam to supply his steam box or steamer.

This, the defendant, being upon the same premises, and using the same motive power, knew, and was well aware, that the plaintiff expected, when he signed the lease of March 30th, that he was acquiring the right to use the premises and facilities for his business, as they had been before, and were then enjoyed. The court, therefore, should have admitted the evidence offered, as going to show the intention of the parties. It is always proper, when a written contract is not specific, to

ascertain such extrinsic facts as the parties had in view at the time the contract was made, in order to ascertain their true meaning. *Barret* v. *Stow*, 15 Ill. 423.

And, on the point, that parol testimony is not admissible to add to or vary the terms of a written instrument, this rule is not violated by the admission of parol testimony to show the condition of the property, with a view to arrive at the true intent of the parties in the terms used by them. *Cook* v. *Whiting*, 16 Ill. 483, also cited by plaintiff in error.

So in the case of *Lampman* v. *Milks*, 21 N. Y. 509, cited by plaintiff in error, it was held, that parties are presumed to contract in reference to the condition of the property at the time of the sale, and neither has a right, by altering arrangements then openly existing, to change materially the relative value of the respective parts.

So here, "the arrangements openly existing" at the date of this agreement, in and about the premises granted, were an unobstructed passage of the exhaust steam from the exhaust pipe of the engine, through another pipe fitted with a stopcock furnished by the plaintiff, to a steam-box in which plaintiff then, and for some months before, under oral and written leases from the defendant, had used, and was then using for steaming wood to soften it for bending, to be used in his various manufactures, and which was indispensable to him for such purpose, and this was well known to the defendant. He, therefore, had no right, after this agreement was made, to change materially the value of any of the respective parts of this property.

In *Atkins* v. *Bordman et al.*, 2 Metc. 457, Chief Justice Shaw, in delivering the opinion of the court, said : The question often arises from the ambiguity, brevity or uncertainty of the decriptive words used, what was the extent of such grant ? in other words, what was the intention of the parties in making and accepting the grant ? It is a rule that the language of the grant shall be construed most strongly against the grantor, and, being made for a valuable consideration, it shall be presumed the grantor intended to convey, and the grantee expected

to receive, the full benefit of it, and therefore that the grantor not only conveyed the thing specifically described, but all other things so far as it was in his power to pass them, which were necessary to the enjoyment of the thing granted. It is also competent to show, in such case, what the parties probably meant when the language is not fully clear and unambiguous, to prove the local position, the relative position of the estate granted, that of the estate reserved, and also the manner in which the grantor himself had used it when owner of the whole (p. 464).

If one grants an estate with all the privileges and appurtenances, and there be a right of way over a third person's estate, that right of way passes, and it would pass as incident, though "appurtenances" be not expressed in the grant. *Kent* v. *Waite,* 10 Pick. 138. And if an estate be granted with the ways and other easements actually used and enjoyed therewith, evidence *aliunde,* by parol or otherwise, may be given to prove that a particular way was then in use by the grantor; and then it is held to pass as parcel of the estate conveyed. *White* v. *Crawford,* 10 Mass. 183.

Testing this case by these principles, can there be any doubt that the plaintiff had the right to show the condition of these premises at the time the agreement was executed, and for the previous terms for which he had occupied them under leases from the defendant? There can be none, and the refusal to let in this proof was error.

We are well satisfied, the plaintiff was entitled, under his contract, to the use of the exhaust steam, as he had previously used it, and was using it at the time this contract was made, together with all the facilities connected therewith, and that they passed to him under the term "appurtenances." It is absurd to suppose plaintiff would have made such a contract, with the understanding that he might, in one moment, by the caprice or malice of defendant, be cut off from the means of carrying on his business and earning his daily bread. This could not have been in the mind or intention of either party. The plaintiff had a perfect right to the enjoyment of all these

facilities, as he had before enjoyed them, no matter how much their enjoyment may have incommoded the defendant, for which he was paid full value by the plaintiff in the annual rent, payable monthly, and in payment of the water rates by which steam was supplied to both.

The defendant, in his brief, makes but one point, and that is:

" Is exhaust steam, the same as steam power or an appurten ance of steam power."

We do not consider this to be the question made by the plaintiff in error, or by the pleadings as they stand. The gravamen of the action is not in cutting off, or reducing the supply of motive power — live steam power — but in cutting the pipe leading from the exhaust pipe, to the plaintiff's steam box, by which his wonted and rightful supply of exhaust steam was cut off. That is the charge, and all evidence on any other point, was wholly irrelevant, and should not have gone to the jury. It matters not whether the engine had sufficient power to work the machinery of the plaintiff if it was all applied in that direction, that is not the question. The defendant knew when he made the contract, how much motive power he would lose, and how much plaintiff would obtain, and if plaintiff has been deprived of his proper share of that power, he can institute suit for damages. That is not this case. It is true, in the first count of the declaration, the plaintiff alleges, he applied the steam power in and about the softening, steaming and seasoning of wood and lumber in his business, and this is so, for though the steam power was not directly applied to this purpose, yet it was through and by it the plaintiff procured the steam which had exerted its power in creating motion, and being spent, for that purpose, was conducted by this pipe to the plaintiff's steam box.

But the plaintiff, at the commencement of the trial, entered a *nol. pros.* on all the counts except those depriving him of the exhaust steam to supply his "steamer." The fourth and fifth counts state the case fully. But as the cause will have to go

31—41ST ILL.

back for another trial, the plaintiff can make such amendments to the declaration as he deems important and necessary.

We have decided the case on the first error assigned, not deeming it necessary to go extensively into other portions of the record, or to discuss the evidence, or the instructions, as those given hereafter will, of course, adopt, or be in harmony with, the views of the case we have here presented.

The judgment is reversed and the cause remanded.

*Judgment reversed.*