HARRY RUBENS

*v.*

MARTHA S. HILL.

*Opinion filed December 22, 1904—Rehearing denied Feb. 15, 1905.*

1. LEASES—*covenant construed as independent.* A provision in a lease that the lessor will cause the premises to be put in a habitable condition for the lessee by a certain date is an independent covenant rather than a condition precedent.

2. SAME—*covenant going to part of consideration is generally independent.* A covenant going only to part of the consideration on both sides, the breach of which may be readily compensated for in damages, is generally considered as independent.

3. SAME—*in case of doubt, courts are inclined to construe provision as a covenant.* In case of doubt whether the lessor intended a provision of a lease to be a covenant or a condition, courts are inclined to construe the provision as a covenant.

4. SAME—*when recovery may be had under common counts.* If possession is delivered to the lessee and he occupies the premises during the entire period, nothing remaining to be done except to pay the amount due for rent, a recovery may be had under the common counts.

5. SAME—*express covenant excludes inconsistent implied covenant on same subject.* An express covenant to put the premises in habitable condition for occupancy, followed by a statement of the particular things which the lessor is to do in that respect, excludes the idea of an implied covenant that the premises shall be fit for habitation.

6. SAME—*when liability for rent is not excused.* Omission by the lessor to perform some thing required by the lease which tends merely to lessen the beneficial enjoyment of the premises, does not release the lessee from liability for rent if he continues to occupy the premises for the term, although he may, in a suit for the rent, recoup such damages as are shown he sustained from such omission.

7. SAME—*whether the acts of the lessor amount to an eviction is a question of fact.* Whether the particular acts of the landlord amount to an eviction is a question of fact for the jury, under the evidence and proper instructions as to the law.

8. PLEADING—*when omission of averment from declaration is cured.* Failure of a declaration in a suit for rent to aver the use and occupancy of the premises by the defendant is cured by a plea that plaintiff entered upon defendant's possession and evicted him.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from Circuit Court of Lake county; the Hon. C. H. DONNELLY, Judge, presiding.

This is an action in assumpsit, brought by appellee, Martha S. Hill, in the circuit court of Lake county against the appellant, Harry Rubens, on September 30, 1902, to recover four months' rent at the rate of $833.33⅓ a month for the premises, known as Ravinoaks, at Highland Park in the said county, a country seat consisting of a mansion and about eighteen acres of land, and also the furniture, carpets, hangings, and other articles of personal property on the premises at the time of the demise, and which said premises and personal property were leased to appellant by appellee for the six months during the summer of 1902 from April 15 to October 15. A schedule of the personal property was attached to the lease. By the terms of the lease appellant covenanted that "in consideration of said demise" he would pay to the appellee $5000.00 rent for the said period of six months in six monthly installments, the first payment to be made, not at the date of the execution of the lease which was February 1, 1902, but on April 15, the date when the lessee was to take possession.

On or about the first day of the term, to-wit, April 15, 1902, appellant paid the first month's rent for the period from April 15 to May 15, 1902; and his family then took possession of the property, and continued to reside there until the end of the term, October 15, 1902. His family consisted of himself, his wife, his son, two married daughters and their husbands, two grandchildren, two nurses and four other woman servants, all of whom lived in the dwelling house. Another grandchild was born to one of his daughters in the dwelling house about September 1, 1902. On May 19, 1902, the appellant paid the second month's rent, which had fallen due about May 15, 1902, to-wit, the sum of $833.33⅓; but appellant paid no more rent after May 19, 1902.

The declaration consisted of the common counts, except that there was inserted in it in the ordinary form of the consolidated common counts after the count for money due on an account stated and before the conclusion, the following: "And in the like sum, ($5000.00), for money due from the defendant to the plaintiff for rent of certain premises and property of the plaintiff there situate, before that time demised and rented by the plaintiff to the defendant at his request." The declaration then concludes as follows: "And being so indebted, the defendant, in consideration thereof, then and there promised to pay the plaintiff on request the several sums of money so due to him as aforesaid. Yet defendant, though requested, has not paid the same, or either of them or any part thereof, to the plaintiff, but refuses so to do; to the damage of the plaintiff of $5000.00," etc. Attached to the declaration as an exhibit was a copy of the lease between the parties.

The pleas were: (1) The general issue. (2) A special plea to the count for rent that, "after the making of the said supposed demise aforesaid, the plaintiff with force and arms, etc., wrongfully and unlawfully withheld from possession of this defendant a portion of the said premises, and refused to let this defendant into possession thereof, although often requested so to do, etc., and continuously thereafter until, to-wit, the time aforesaid, refused to let this defendant into possession thereof," concluding with the verification. (3) A special plea to the count for rent that "the said plaintiff with force and arms, etc., entered into and upon said premises in said count of said declaration alleged to have been demised to this defendant, and into and upon the possession of this defendant, and ejected, expelled, put out, evicted and amoved this defendant, and kept him so ejected, expelled, put out, evicted and amoved from the possession thereof, from thence hitherto," etc., concluding with the verification. (4) Special plea that the "said plaintiff with force and arms, etc., wrongfully and unlawfully entered into and upon the said

premises in said declaration alleged to have been demised to this defendant, and into and upon the possession of this defendant, and ejected, expelled, put out, evicted and amoved this defendant from the possession of a large part of said premises, to-wit, a certain tower and certain engine house or building, and portions of a certain barn or stable, being part and parcel of said premises so alleged to have been demised to this defendant as aforesaid, and kept this defendant so ejected, expelled, put out, evicted and amoved from the possession thereof from thence hitherto," concluding with the verification. Replication was filed by the plaintiff to these pleas on November 11, 1903, to which replication a demurrer was subsequently confessed by plaintiff, and an amendment made thereto in pursuance of leave to amend the same, given by the court. Upon the issues thus joined, the parties went to trial.

The jury returned a verdict for the plaintiff for the full amount sued for, together with interest to the time of the trial, that is to say, for the amount of rent due by the terms of the lease for the last four months of the rental period, beginning with June 15, 1902, and ending with October 15, 1902. Motions for new trial and in arrest of judgment were overruled, and judgment was entered upon the verdict, less the amount of $2.02 remitted from the verdict by the appellee; and the amount of the judgment rendered was $3547.42. The judgment for this amount has been affirmed on appeal by the Appellate Court for the Second District, and the appellant now prosecutes this further appeal to reverse said judgment of affirmance.

The tract of eighteen acres above referred to was divided by a ravine, running westerly from the lake shore, into two irregular halves or portions, called in the testimony the north half and the south half of the place. On the north half was a dwelling house and a stable. On the south half, which was improved as a kind of park, was a brick and stone tower with a wind-mill on the top of it; and there were steps lead-

ing down the bluff, which at that point was about sixty feet high, from near this tower to the beach of the lake, and at the beach there was a machine house. In the stable there were sleeping rooms on the second floor for certain of the employees upon the place.

The lease recites "that the party of the first part (appellee) for and in consideration of the covenants and agreements hereinafter mentioned to be kept and performed by the party of the second part (appellant), has demised and leased to the party of the second part the premises," (as above described), "together with all the buildings and improvements thereon, to be occupied as a dwelling house and country seat," together with the personal property above mentioned; "to have and to hold the same unto the party of the second part, from the 15th day of April, 1902, until the 15th day of October, 1902. And the party of the second part in consideration of said demise, does covenant and agree with the party of the first part as follows: First, to pay as rent for said demised premises the sum of $5000.00, payable in six equal monthly installments of $833.33 each, the first of said installments to be paid on the 15th day of April, 1902, and the other five installments each to be paid on the 15th day of each succeeding month until the said sum of $5000.00 shall have been fully paid; second, the said party of the first part hereby agrees to cause said premises to be put into a habitable condition and make the same ready for occupancy by the said party of the second part, on or before the said 15th day of April, 1902; meaning and intending hereby that the boards covering the windows and doors of the dwelling house shall be removed by the said party of the first part, the fixtures connected with the plumbing, and the dwelling house put in condition for occupancy." By the terms of the lease the lessor agrees to employ a gardener on the premises, and such additional help as may be necessary to maintain the lawns, shrubbery, vegetables, etc.; and also to keep a horse and wagon in the barn to be used by the

gardener in the performance of his work; also to pay the
water rents and the expense of sprinkling Sheridan road.in
front of the premises; also to cause the garden thereon to
be planted with certain vegetables for the use of the lessee,
provided that the gardener employed by the lessor be allowed
to have certain seeds for the planting of the crop of the next
season, and enough vegetables to supply his own table; also
to have the lawn fertilized at her own expense if necessary;
also to sell to the lessee the chickens on the place at the be-
ginning of the lease, the gardener to have the privilege of
supplying himself with eggs, etc. The seventh clause of the
lease was as follows: "It is agreed that the wind-mill on
the water tower on the premises is not in order to supply
water, and is not to be operated." The lease contains further
provisions to the effect that the parties will meet for the pur-
pose of checking up the articles of personal property leased
to the lessee; also to the effect that, in case the dwelling
house or barn should be destroyed by fire prior to April 15,
1902, and should not be re-built before April 15, 1902, then
the lease should, at the option of the lessee, be null and void.
The eleventh clause of the lease, so far as it is necessary to
quote the same, is as follows: "The said party of the second
part (the lessee) hereby agrees that he will keep said prem-
ises in good repair, and will immediately replace all broken
globes, glass or fixtures with those of the same size and qual-
ity as that broken, and will keep said premises and appurte-
nances in a clean and healthy condition, according to the city
ordinances and direction of the proper public officers, during
said term, and upon the termination of this lease in any way,
will yield up said premises and said personal property to said
party of the first part in good condition, loss by fire and or-
dinary wear and tear excepted." By the terms of the lease
the lessee agrees that the premises shall not be used for any
other purpose than as a dwelling house for himself and fam-
ily, and that he will not sub-let the same, nor assign the lease
without the written consent of the landlord, etc., "and will

not permit the same to remain vacant or unoccupied for more than ten consecutive days, and will not permit any alteration of or upon any part of said demised premises, nor allow any signs or placards posted or placed thereon." The last clause of the lease is as follows: "In case said premises shall be rendered untenantable by fire or other casualty, on or after April 15, 1902, and during the term of this lease then the lessee may at his option terminate this lease."

Rubens, Dupuy & Fischer, for appellant:

Conditions precedent contained in an instrument sued upon must be averred. Averment of a contract without averring the conditions contained therein is tantamount to averring that the contract contained no such conditions. *People v. Glann,* 70 Ill. 232; 1 Chitty's Pl. (16th Am. ed.) 305, 329, *et seq.; Insurance Co.* v. *Rogers,* 119 Ill. 474; *Insurance Co.* v. *Nelson,* 65 id. 415; *Mutual Aid* v. *Paine,* 17 Ill. App. 572; Abbott's Brief on Pleadings, (2d ed.) sec. 133.

Under the common counts no instrument is admissible except a contract for the absolute, unconditional payment of money without conditions. *Meyers* v. *Phillips,* 72 Ill. 460.

The common counts proceed upon a pre-existing debt or an agreement implied by law from the facts stated. 1 Chitty's Pl. (14th Am. ed.) 340, 341.

The condition contained in this lease was a condition precedent, inasmuch as it was to be performed before appellant was to pay any money. *Baird* v. *Evans,* 20 Ill. 30; 18 Am. & Eng. Ency. of Law, (2d ed.) 620, note 7; 1 Chitty's Pl. (16th Am. ed.) 331; *White* v. *Wakefield,* 39 Ill. 509; *Clark* v. *Ford,* 41 Ill. App. 199; *Wright* v. *Lattin,* 38 Ill. 293.

A lease will be construed most favorably to the lessee. *Schmohl* v. *Fiddick,* 34 Ill. App. 190.

No excuse for non-performance or waiver of performance is admissible in evidence under the common counts, nor in the absence of a special count setting up such alleged excuse or waiver. *Parmly* v. *Farrar,* 169 Ill. 606; *Peoria* v.

*Construction Co.* 169 id. 36; *Burnham* v. *Roberts,* 70 id. 19; *Iusurance Co.* v. *Kemp,* 29 Ill. App. 232; *Brand* v. *Henderson,* 107 Ill. 141.

The contract must be completed to authorize a recovery under these counts. *Throop* v. *Sherwood,* 4 Gilm. 92; *Lane* v. *Adams,* 19 Ill. 167; *Sands* v. *Potter,* 165 id. 397; *Eggleston* v. *Buck,* 24 id. 262.

Where the contract has not been fully performed, but the plaintiff claims that literal performance on his part has been excused or waived so that he is entitled to recover without proof of full performance, he must declare specially and must set up such excuse or waiver of performance. *Burnham* v. *Roberts,* 70 Ill. 19; *Insurance Co.* v. *Kemp,* 29 Ill. App. 232.

Eviction from a portion of the premises suspends the rent but does not terminate the lease, and the lessee may remain in possession of the balance of the demised premises until the expiration of the term and is not bound to pay rent therefor. *Smith* v. *Wise,* 58 Ill. 141; *Hayner* v. *Smith,* 63 id. 430; *Walker* v. *Tucker,* 70 id. 527; 11 Am. & Eng. Ency. of Law, (2d ed.) 458; 18 id. 298; 12 Ency. of Pl. & Pr. 848; *Upton* v. *Townsend,* 48 Eng. C. L. 30.

Rendering demised premises uninhabitable may amount to an eviction. *Halligan* v. *Wade,* 21 Ill. 470; *Wright* v. *Lattin,* 38 id. 293.

In a lease of a furnished home for a short period, such as a season or a summer, there is always an implied covenant or warranty on the part of the lessor that the premises are fit for habitation. *Ingalls* v. *Hobbs,* 156 Mass. 348; *Smith* v. *Marrabie,* 11 M. & W. 5; *Wilson* v. *Hatten,* L. R. 2 Exch. Div. 336.

GWYNN GARNETT, and EUGENE H. GARNETT, (CHAS. WHITNEY, of counsel,) for appellee:

In Illinois, assumpsit for rent on a lease for years is unauthorized by the strict rule of the common law, for it did not exist in England in the fourth year of James I, and the

statute of 11 George II is not in force here. There is, it seems, no authority in this State, except universal practice, for assumpsit either on a special count or on the count of use and occupation on a lease for years, but assumpsit has been generally adopted as a convenient remedy by common consent, and by reason of uniform practice its use as a remedy to recover rent on leases for years is beyond question. *Gibson* v. *Courthope*, 1 D. & R. 205; *Jones* v. *Reynolds*, 7 C. & P. 336; *Little* v. *Martin*, 3 Wend. 219; *Sullivan* v. *Jones*, 3 C. & P. 579.

If there was any defect in the declaration in not averring use and occupation, the defect was supplied by the defendant's pleas. *Wallace* v. *Curtis*, 36 Ill. 157; *Barrett* v. *Lingle*, 33 Ill. App. 91; 1 Chitty's Pl. 671.

There is no variance between the declaration and the proof, even if the lease sued on contained conditions precedent to recovery. *Pickard* v. *Bates*, 38 Ill. 40; *Combs* v. *Steele*, 80 id. 101; *Fowler* v. *Deakman*, 84 id. 130; *Neagle* v. *Herbert*, 73 Ill. App. 20; 64 id. 622; *Shepard* v. *Mills*, 173 Ill. 223; *Springer* v. *Orr*, 82 Ill. App. 558; *Railroad Co.* v. *Nixon*, 99 id. 503; 199 Ill. 234.

Appellee's covenant to put the house in condition for occupancy before the beginning of the term was not a condition precedent to recovery by her. *Nelson* v. *Oren*, 41 Ill. 23; *White* v. *Gillman*, 43 id. 502; *Palmer* v. *Meriden Britannia Co.* 188 id. 522; *Lunn* v. *Gage*, 37 id. 28.

On the demise of a furnished house at a watering place for a single season there is no implied covenant of tenantability. *Davis* v. *George*, 67 N. H. 396.

Where an instrument contains an express covenant upon a subject there is no room for an implied covenant. Taylor on Landlord and Tenant, (8th ed.) sec. 253; 12 Am. & Eng. Ency. of Law, (1st ed.) 1012; 8 id. (2d ed.) 83; *Finley* v. *Steele*, 23 Ill. 56.

On a demise of premises to be used for a specific purpose there is no implied covenant that the premises are fit for that

purpose. *Hart* v. *Windsor,* 12 M. & W. 83; *Sutton* v. *Temple,* 12 id. 52; *Howard* v. *Doolittle,* 3 Duer, 464; *Cleve* v. *Willoughby,* 7 Hill, 83; *Sunasack* v. *Morey,* 98 Ill. App. 506; *McCoull* v. *Herzberg,* 33 id. 545.

Partial performance and waiver of the balance of performance may be shown under the common counts. *Catholic Bishop* v. *Bowes,* 62 Ill. 188; *Holmes* v. *Stummell,* 24 id. 371; *Geary* v. *Bangs,* 138 id. 79; *Mount Hope Cemetery* v. *Weidenmann,* 139 id. 74; *Wolf* v. *Schlacks,* 67 Ill. App. 118; *Foster* v. *McKeown,* 192 Ill. 339; *Russell* v. *Insurance Co.* 132 Mass. 493; *Levy* v. *Insurance Co.* 10 W. Va. 565; *Insurance Co.* v. *Grunert,* 112 Ill. 68.

There was no eviction. *Keating* v. *Springer,* 146 Ill. 495; *Upton* v. *Townsend,* 84 Eng. C. L. 30; *Patterson* v. *Graham,* 40 Ill. App. 399; 11 Am. & Eng. Ency. of Law, (2d ed.) 470.

There is no evidence in the record as to rental value of the premises. Evidence on this point can alone be considered in determining damages. *Long* v. *Gieret,* 57 Minn. 278.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—The first objection, made by the appellant, is that the lease was not admissible under the declaration, and that, therefore, its admission by the trial court was error. The charge is made that there was a variance between the allegations of the declaration and the terms of the lease, introduced in evidence. It is said that the declaration counted upon an absolute, unconditional agreement to pay money, and that the lease, offered in evidence, contained conditions precedent to be performed by appellee before appellant was bound to pay any money; and that, therefore, there was a fatal variance. The provision of the lease, which counsel for appellant in their objections on the trial below pointed out as constituting a condition precedent, is the provision, which requires appellee "to cause said premises to be put into a habitable

condition and make the same ready for occupancy by the said party of the second part on or before the said 15th day of April, 1902," etc. If the agreement of the appellee to cause the premises to be put into a habitable condition, and to make the same ready for occupancy before the commencement of the term, involves or is equivalent to an agreement to repair the premises, then it constitutes an independent covenant merely. In the construction of a particular provision the intention of the grantor governs, and where there is any doubt whether the intention of the grantor is to create a covenant or to create a condition, the courts are inclined to construe it as a covenant, and not as a condition. (6 Am. & Eng. Ency. of Law,—2d ed.—p. 502; *Davis* v. *Wiley,* 3 Scam. 234; *Lunn* v. *Gage,* 37 Ill. 19). The provision in question, being a covenant, cannot be regarded otherwise than as an independent covenant. It is only where covenants are dependent, that the performance by each party of his own covenant is a condition precedent to his right to recover on the covenant of the other party. (18 Am. & Eng. Ency. of Law, —2d ed.—p. 620). If the provision in question be regarded as a covenant to repair, then it is independent of the covenant to pay rent. The general rule is, that the covenant of the landlord to repair or make improvements, and the covenant of the lessee to pay the rent, are independent. (18 Am. & Eng. Ency. of Law,—2d ed.—p. 620; *Haven* v. *Wakefield,* 39 Ill. 509). It is to be observed that, in the case at bar, appellant as lessee covenants to pay rent in consideration of the demise alone, and not in consideration of both the demise and of the agreement to put the premises into a habitable condition and make the same ready for occupancy before the beginning of the term. This is another circumstance, going to show that the covenant as to habitability and occupancy is independent of the covenant to pay rent. In *Baird* v. *Evans,* 20 Ill. 29, where the lessor agreed to make certain improvements upon the leased premises, and the agreement was held to be a condition precedent to the payment of the rent, the

consideration for the payment of the rent was not merely the leasing of the premises, but the making of the improvements. Such is not the case here, and, hence, the covenant here under consideration, being an independent covenant, is not a condition precedent. If such a covenant is violated, the lessee has an action against the lessor for damages, or can recoup for damages. (*Nelson* v. *Oren,* 41 Ill. 18; *White* v. *Gillman,* 43 id. 502; *Lunn* v. *Gage,* 37 id. 19; *Wright* v. *Lattin,* 38 id. 293; *Haven* v. *Wakefield,* 39 id. 509; *Palmer* v. *Meriden Britannia Co.* 188 id. 508).

But let it be admitted that appellant agreed to pay rent, not only in consideration of the leasing of the premises to him, but also in consideration of the agreement that appellee would put them into a habitable condition and make them ready for occupancy before the beginning of the term on April 15, 1902; then, in such case, the consideration has two parts, one of which is the leasing of the premises, and the other is the making of the same habitable and fit for occupancy. It is well settled that, where a covenant goes only to a part of the consideration on both sides, and the breach of such covenant may be readily compensated for in damages, it is generally considered independent. (18 Am. & Eng. Ency. of Law,—2d ed.— p. 619).

In *Nelson* v. *Oren, supra,* where, in consideration of a certain sum of money, Nelson assigned a lease to Oren, and in the same instrument agreed to deliver up possession of the premises on a certain day, and the lease was assigned, but Oren failed to get possession on the day agreed upon, it was held that an important part of the consideration was executed by the transfer of the term, although the remaining part was not executed, and that, for the breach of the latter, appellee had a right to recover damages; and in that case we said (p. 23) : "We do not consider that delivery of possession, under a fair construction of this covenant, was a condition precedent to the right of appellant to recover for the unexpired term. That would seem to be the most import-

ant part of the contract, and where a covenant goes only to part of the consideration on both sides, and a breach of such covenant may be paid for in damages, it is an independent covenant, and an action may be maintained for a breach of the covenant on the part of the defendant without averring performance in the declaration.   *   *   * · The covenant to put the appellee in possession was an independent covenant, the breach of which could be compensated in damages." So, here, the covenant as to habitability and occupancy was an independent covenant, the breach of which could be compensated in damages, and it was not necessary to aver the performance thereof in the declaration.

In *Wright* v. *Lattin, supra,* we said (p. 296) : "If he (the landlord) covenant to repair before the term commences, it may be the tenant might refuse to enter upon the term until the repairs were made, but having entered upon the term and received possession, he cannot abandon the lease and refuse to pay rent for the breach of any other covenant, except for quiet enjoyment. If the landlord fail to repair according to his covenant, the tenant may recoup the amount from the rent, or may sue upon the covenant." In the case at bar, the appellee covenanted to do certain things before the term of the lease began, and, while the appellant might have refused to enter upon the term until those things were done, yet inasmuch as he did enter upon the term and took possession and kept possession until the termination of the lease on October 15, 1902, he cannot refuse to pay rent for the failure of the landlord to do the things, which he agreed to do before the commencement of the term. Appellant, while refusing to pay rent, did not abandon the lease.

In *White* v. *Gillman,* 43 Ill. 502, where appellee sold to appellant, his landlord, all the crops on his land at a certain price, and agreed to leave the premises in ten days with all his traps, and did leave the premises within the time named, but left a part of such traps, it was claimed by the appellant that removal of all the traps within the time specified was a

condition precedent, and such condition not being performed by appellee, the latter had no right of action to recover the price agreed to be paid, but the construction thus contended for was not allowed.

In *Palmer* v. *Meriden Britannia Co.* 188 Ill. 508, this court said (p. 522) : "Where the plaintiff's covenant goes to only a part of the consideration, and a breach of the covenant can be compensated in damages, the defendant cannot rely upon the covenant as a condition precedent, but must perform the covenant on his part, and then rely upon his claim for damages for any breach of the covenant by the other party, either by way of recoupment, or in a separate action." We are, therefore, of the opinion that the covenant here insisted upon by the appellant as being a condition precedent cannot be regarded as a condition precedent, and, therefore, the lease was not inadmissible under the common counts for the reason insisted upon.

Here, there was a performance of the contract. Possession of the premises was delivered to appellant, and he occupied the premises for the full period of six months specified in the lease, and at the expiration of the lease nothing remained for him to do on his part except to pay the amount due for the rent. The contract was fully performed on the part of the plaintiff, and, where such is the case, recovery can be had under the common counts. In *Mount Hope Cemetery Ass.* v. *Weidenmann,* 139 Ill. 67, this court said (p. 74) : *"Indebitatus assumpsit* lies upon a written contract, though it be under seal, when the plaintiff has performed and nothing remains to be done under it but the payment of money, which payment it is the duty of the defendant, under the contract, to make. In such case the plaintiff need not declare specially." It is well settled that, while there is no liability by implication of law upon an express contract executory in its provisions, yet where there has been full performance and nothing remains to be done but the payment of money, or where there has been only part performance

and the remainder has been waived or prevented, and the work performed has been accepted, a recovery may be had under the common counts. (*Catholic Bishop of Chicago* v. *Bauer,* 62 Ill. 188; *Fowler* v. *Deakman,* 84 id. 130; *Evans* v. *Howell,* 211 id. 85; *Foster* v. *McKeown,* 192 id. 339; 2 Greenleaf on Evidence, sec. 114).

It is claimed by counsel for appellant, that the declaration is defective in not averring that appellant used or occupied the premises in question. If such a defect exists in the declaration, we think that it was cured by the pleas. The pleas, as set forth in the statement preceding this opinion, averred that, after the making of the lease, the appellee entered upon the possession of the appellant and evicted him. In *Wallace* v. *Curtiss,* 36 Ill. 156, where there was a material omission in the declaration, it was held that such omission was supplied by the special plea, it being there said (p. 158) : "The pleas cured the omission. * * * The issues were not alone on the facts stated in the declaration, but upon the agreement stated in the special pleas, and they may be taken as amendatory of the declaration, of the issue and verdict, in order to favor the justice of the case." Chitty in his work on Pleadings, (marg. p. 671), cites a case, which illustrates this principle, and says that, in an action for trespass for taking a hook, where the plaintiff omitted to state that it was his hook and that it was in his possession, and the defendant in his plea justified the taking the hook out of the plaintiff's hand, the court held, on motion in arrest of judgment, that the omission in the declaration was supplied by the plea. We think, moreover, that such other formal defects, as are alleged by the appellant to exist in the declaration, were cured by the verdict, and under the Statute of Amendments and Jeofails, which latter statute provides that "judgments shall not be arrested * * * for any mispleading, insufficient pleading," etc. (1 Starr & Curt. Ann. Stat. —2d ed.—p. 390; *Keegan* v. *Kinnare,* 123 Ill. 280; 1 Chitty's Pl. pp. 682-684).

The agreement of the appellee to cause the premises to be put into a habitable condition and make the same ready for occupancy on or before April 15, 1902, was not an unrestricted agreement to make all such repairs, as were necessary to make the premises habitable before the commencement of the term. The latter part of the agreement in question qualifies and explains its meaning in the following words, to-wit: "meaning and intending hereby that the boards covering the windows and doors of the dwelling house shall be removed by the said party of the first part, the fixtures connected with the plumbing, and the dwelling house put in condition for occupancy." These words qualify and serve to explain both the preceding clauses, that is to say, the clause, "to cause said premises to be put into habitable condition," and also the clause to "make the same ready for occupancy." The true intent and meaning of the parties to a contract may be determined by an examination of the surrounding circumstances, under which the contract was made, and the acts of the parties themselves in reference to it. (*Hadden* v. *Shoutz,* 15 Ill. 581; *Piper* v. *Connelly,* 108 id. 646; *Louisville and Nashville Railroad Co.* v. *Koelle,* 104 id. 455).

The evidence shows that the place, rented by appellee to appellant, was a country place for use and occupation in the summer time only, and that, during the winter, the windows and doors of the dwelling house upon the premises were enclosed with boards, and that the plumbing was disconnected from the fixtures to which it was attached, in order to prevent freezing in the winter time. The evidence also shows that the appellant visited the premises before the contract was made, and went through the house, and knew that it had been closed during the preceding winter, and that the doors and windows had been barred up, and that the plumbing had been disconnected, and that the house required airing, and that the furniture had to be dusted and arranged, and the shades and curtains hung. He was aware of these facts when he entered into the lease. The evidence also shows

that appellee or her servants or agents removed the boards in question, and connected the plumbing, and aired the house, and arranged the furniture, so as to put the house in a condition to be occupied by the appellant. In other words, the proof tends to show that the covenant as to habitability and occupancy, interpreted according to the construction above given, was fully performed by the appellee before the appellant took possession.

It is claimed, however, on the part of the appellant, that the house upon these premises was a furnished house, and that, where a furnished home is leased for a short period as for a season or summer, there is an implied covenant or warranty on the part of the lessor that the premises are fit for habitation. The doctrine, thus contended for, is sustained by some of the authorities, and repudiated by others. We do not deem it necessary to discuss the doctrine, or to determine the question whether it should be adopted or approved by this court or not, inasmuch as the decision of the present case does not require such discussion. It is a general rule that, where there is an express covenant relating to the same matter as that embraced in the implied covenant, however qualified the latter may be, the implied covenant will be excluded upon the principle embodied in the Latin maxim, *expressum facit cessare tacitum.* (12 Am. & Eng. Ency. of Law,—1st ed.—p. 1013). Express covenants abrogate the operation of implied covenants in accordance with the rule of interpretation, that the expression of one thing in a contract is the exclusion of another. (8 Am. & Eng. Ency. of Law,—2d ed.—p. 83; *Finley* v. *Steele,* 23 Ill. 54). In the case at bar, there is an express covenant on the subject of making the furnished house upon the premises in question habitable and ready for occupancy by the beginning of the term, and, therefore, there is no room for an implied covenant. Where the minds of the parties have met and made an express agreement, the law does not enlarge and qualify this express agreement by implication. (Taylor on Landlord and

Tenant,—8th ed.—sec. 253). It is true that, although a lease contains express covenants, covenants may at the same time be implied, but the latter will be effective only when they are consistent with the express covenants. (12 Am. & Eng. Ency. of Law,—1st ed.—p. 1012). An implied covenant, that the house upon these premises was fit for habitation, would certainly be inconsistent with the restricted meaning, already given to the agreement or covenant as to habitability and occupancy.

*Second*—The defense, sought to be made by the appellant, was two-fold. It is claimed that, by the terms of the lease, appellee was bound not only to make the premises habitable and ready for occupancy at the beginning of the term on April 15, 1902, but was also obliged to keep them in repair during the running of the lease, and from the beginning to the end of the term. There is nothing to this effect in the express provisions of the lease. On the contrary, appellant agreed that he would keep said premises in good repair. Upon the assumption, however, that appellee was obliged to make repairs after the beginning of the term, appellant's first ground of defense is that the house was leaky, that the water came in through the roof, and around the windows, during the rains in the summer of 1902, and that the basement was not properly drained, so that the house was damp. It is also claimed that these conditions could have been obviated by making certain repairs during the running of the lease. The second ground of defense, urged by the appellant, is that he was evicted from a part of the premises. The alleged eviction proceeds from the contention of the appellant, that he was excluded from the tower, and the building on the beach, as described in the statement preceding this opinion, and from two of the rooms in the stable, connected with the dwelling house.

Appellant refused to pay any rent after the 19th of May, 1902, and some conversation took place between him and appellee and her agents, and some letters passed between them,

in reference to the making of certain repairs insisted upon by appellant. There was a conflict in the testimony as to the extent of the dampness and the leaks, and the absence of proper drainage, and also as to the alleged decay of certain portions of the porch around the dwelling. This was a matter for the consideration of the jury, and the jury have determined it against appellant. The court properly instructed the jury that, if they should believe from the evidence that any wrongful act of the appellee or omission to perform anything, required of her by her lease, was such as tended merely to diminish the beneficial enjoyment of the premises leased by the appellant, he was still bound for the rent if he continued to occupy the same, and that, if the appellant did not abandon the leased premises, his obligation to pay the rent therefor remained, but that he might show, as a matter of defense in what manner such beneficial enjoyment of the premises was diminished by such act or omission to act of the plaintiff, and recoup from the rent such damages, if any, he may have shown by the evidence he had sustained by reason of the wrongful act or omission to act of the plaintiff. Such is the law as has been declared by this court. (*Chicago Legal News Co.* v. *Browne*, 103 Ill. 317; *Barrett* v. *Boddie,* 158 id. 479; *Keating* v. *Springer,* 146 id. 481). Appellant offered no proof whatever on the question of damages, although the instructions given to the jury told them that he might recoup his damages, and were, therefore, exceedingly favorable to him. Inasmuch as appellant entered upon the premises, and enjoyed the use of them during the term of the lease, he could not defeat recovery by showing that there were certain leaks in the roof, or spots in the plaster, or on the walls. It is not claimed on the part of the appellant that the amount of the judgment recovered against him was too large; but it is claimed that he should not be required to pay anything at all for the use of the premises, occupied by him during the whole of the term mentioned in the lease. If the defects arising out of dampness and leakage were such as to

entitle the appellant to damages, then the jury were entitled to consider the difference in rental value, produced by such defects, in order to determine the amount of his damages by way of recoupment, but no evidence was produced upon the subject of rental value.

Upon the subject of eviction, the evidence is conflicting also. As to the rooms in the stable, appellant desired his coachman, with the latter's wife, to occupy certain rooms in the stable adjoining the hay loft, and, as it would be necessary to have a stove in the rooms so occupied by the coachman, some objection may have been made by the appellee or her agent to the putting of a stove in the stable. But it is not clear from the proof that there was an absolute refusal on the part of the appellee to allow the rooms to be so occupied. Appellant proposed to the appellee, or her agent, that he would himself erect a smoke-stack on the side of the stable to be used by the coachman. The evidence is not clear that appellee refused to allow this to be done, although the lease expressly provides that the appellant himself was not to allow any alterations to be made in the premises. As to the tower and the machine house, the lease expressly provides that the wind-mill on the tower was not in order to supply water, and was not to be operated. The lease also provides that the appellee was to keep her gardener upon the premises, and a horse and wagon in the barn to be used by such gardener. There is some proof, tending to show that the appellant desired to use the machine house as a bath house. The proof shows that it was not built for, nor intended to be used as, a bath house. The proof also tends to show that appellant desired to make use of some part of the tower as a bath house. Some objection may have been made to the use of the tower and machine house as a bath house because they were never intended for such a purpose, but there is evidence tending to show that appellee did not prevent appellant from using the tower, or the machine house, for any legitimate purpose. The testimony of the appellant tends to show that

he was locked out of the tower, and that he was not allowed to use the machine house, and that some restriction was placed upon his use of the rooms in the stable, so far as such use would require the putting in of a stove, and thereby running the risk of the destruction of the stable by fire. Appellant insists most strenuously that, having been evicted from the use of the tower, the machine house and these rooms in the stable, he was not obliged to pay any rent at all for the use of the dwelling house which he occupied, or of the balance of the premises. This court has held that the question, whether the acts of the landlord amount to an eviction of the tenant is a question of fact to be determined by the jury. (*Lynch* v. *Baldwin,* 69 Ill. 210; *Patterson* v. *Graham,* 140 id. 531). "Acts of a grave and permanent character, which amount to a clear indication of intention on the landlord's part to deprive the tenant of the enjoyment of the demised premises, will constitute an eviction." (*Hayner* v. *Smith,* 63 Ill. 430; *Keating* v. *Springer,* 146 id. 481). "The rule is well settled that the wrongful act of the landlord does not debar him from a recovery of rent, unless the tenant by such act has been deprived in whole or in part of the possession, either actually or constructively, or the premises rendered useless." (*Chicago Legal News Co.* v. *Browne, supra*). The question, whether or not there was an eviction, was submitted to the jury under the instructions, and, by the judgments of the lower courts, this question of fact has been settled against the appellant. At the request of the appellant, the court instructed the jury that any act of a permanent character done by the landlord, and which has the effect of depriving the tenant of the use of the premises leased, or of a part of them, would amount to an eviction.

After the appellant began to complain of the condition of the dwelling house upon the premises, the appellee employed certain persons, architects and carpenters, to examine the premises and see what repairs were necessary. The appellant seems also to have caused an examination to be

made. The persons, so employed to examine the premises, made reports, but there is evidence, tending to show that the appellant himself refused to permit repairs to be made, unless a lease should be given to him for the next year upon the same terms, substantially, as he was then occupying the premises, except that he was to occupy the rooms in the stable for the whole year, and to build a chimney at his expense, and to pay the water tax for the barn. In a written memorandum signed by him, after reciting the terms above stated for a lease for the coming year, appellant used these words: "If above accepted, will pay delinquent rent, and permit repairs." This tends strongly to show that, although the appellee had taken measures to ascertain whether the premises needed repairs or not, the appellant himself was unwilling to have them made, unless he should be given a lease for the coming year upon terms demanded by him.

The questions of fact, whether or not appellant was entitled to damages on account of the defective condition of the premises occupied by him, or whether or not he had been evicted from any part of the premises, were submitted to the jury under proper instructions, and are not subject to review by this court. Much complaint is made in regard to instructions, and in regard to the rulings of the court upon the admission and exclusion of evidence, but after a careful examination of the whole record, we are satisfied that the instructions and the rulings of the court upon the evidence conform substantially to the views heretofore expressed in this opinion, and that no errors were committed which operated to the injury of the appellant.

Accordingly, the judgment of the Appellate Court, affirming the judgment of the circuit court, is affirmed.

*Judgment affirmed.*